**James OAKLEY, Plaintiff–Appellant,**

v.

**CITY OF LONGMONT and Safeco Insurance Company of America, Defendants–Appellees.**

**No. 89–1021.**

United States Court of Appeals, Tenth Circuit.

Dec. 8, 1989.

Mark E. Biddison and Andrew C. Littman of Stevens, Littman & Biddison, Boulder, Colo., for plaintiff-appellant.

Claybourne M. Douglas, City Atty., for defendant-appellee City of Longmont.

## ORDER ON PETITION FOR REHEARING

Before MOORE, ANDERSON, and BRORBY, Circuit Judges.

**JOHN P. MOORE, Circuit Judge.**

Upon appellees' motion for rehearing, it is ordered that rehearing is granted. The mandate is recalled. Upon rehearing, the court's first opinion in the case, *Oakley v. City of Longmont*, 887 F.2d 249 (10th Cir. 1989), is withdrawn. The attached opinion is substituted in its place. The suggestion for rehearing en banc is denied without prejudice. The mandate is reissued forthwith.

Before MOORE, ANDERSON, and BRORBY, Circuit Judges.

**JOHN P. MOORE, Circuit Judge.**

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

James Oakley sought a declaratory judgment that he was entitled to continue his medical insurance coverage under the health plan offered by his employer, the City of Longmont (the City), after he was severely injured in an automobile accident. Resolving cross-motions for summary judgment, the district court granted the City's motion, finding that under 42 U.S.C. § 300bb–2(2)(D)(i), the City is not required to provide continuation coverage to its previously covered employee. *Oakley v. City of Longmont*, 701 F.Supp. 800 (D.Colo. 1988). We reverse.

### I.

Mr. Oakley was employed by the City as a fire fighter when he was involved in an

automobile collision with a drunk driver and suffered a permanent head injury. As a City employee, Mr. Oakley was covered by the City of Longmont Medical and Dental Care Expense Reimbursement Plan, Plan No. 56690 (the Plan), which extended coverage until his termination on August 27, 1988, and for an additional ninety days until November 26, 1988, as provided by the Plan. In July 1988, after an exchange of letters, the City informed Mr. Oakley that he was not eligible to maintain his medical insurance coverage for an additional eighteen months with the City's Plan because he is a dependent under his wife's group health plan. Nevertheless, on October 7, 1988, the Plan notified Mr. Oakley of his option to continue his prior medical coverage for eighteen months by maintaining the premium payments himself. Apparently, Mr. Oakley did not return the election form at that time because of his prior notification from the City that he was ineligible for continuation coverage. Subsequently, Mr. Oakley submitted the form on November 21, 1988.[1]

At the time of his termination, Mr. Oakley was a patient at the Bear Creek Rehabilitation Center where he was receiving rehabilitation therapy for the brain injury he had suffered. Although he was listed as a dependent on his wife's group health plan, Mrs. Oakley's coverage does not reimburse the costs of this treatment. Consequently, Mr. Oakley sought declaratory and injunctive relief to continue his medical coverage with the City.

The district court, however, denied relief under 42 U.S.C. § 300bb–2(2)(D)(i), which states that continuation coverage ends on the date "the qualified beneficiary first becomes, after the date of the election—(i) covered under any other group health plan (as an employee or otherwise)...." The court cited accompanying legislative history which it believed manifested Congress' "beneficent purpose of requiring a minimal amount of continuation coverage for a limited time to provide qualified beneficiaries an opportunity to secure other health benefits." 701 F.Supp. at 801–02. However, relying principally on language in proposed regulations promulgated in the Federal Register by the Internal Revenue Service,[2] which was delegated the authority to issue regulations defining required coverage, the district court concluded that Congress did not intend "to require employers to provide continuation coverage to qualified beneficiaries who are covered by more than one group health plan." Id. at 802. Mr. Oakley now appeals this conclusion, contending the court erred in construing the statute and in relying on a proposed Treasury Regulation that has not yet been adopted.[3]

## II.

In 1986, Congress passed the Comprehensive Omnibus Budget Reconciliation Act, Pub.L. No. 99–272, 100 Stat. 82 (1986) (COBRA), to address the "staggering budget deficits now facing the United States." S.Rep. No. 99–146, 99th Cong., 2d Sess. 3, reprinted in 1986 U.S.Code Cong. & Admin. News 42, 43. Conflated with its many revenue-related provisions is the statute at issue, 42 U.S.C. § 300bb–1, entitled "Requirements for certain group health plans for certain state and local employees." Section 300bb–1 was spawned by Congress' concern "with reports of the growing num-

1. In its opinion, the district court stated, "Because plaintiff has not yet elected continuation coverage, and because he is a dependent under his wife's policy, the City has not extended the plaintiff continuation coverage." Oakley v. City of Longmont, 701 F.Supp. 800, 801 (D.Colo. 1988). The record, however, establishes that Mr. Oakley timely returned the election form. The City does not contest his eligibility on this basis.

2. The proposed regulation states that continuation coverage must not end before "(d) the first date after the date of the election upon which the qualified beneficiary is covered (i.e., actually covered, rather than merely eligible to be covered) under any other group health plan that is not maintained by the employer, even if that coverage is less valuable to the qualified beneficiary than COBRA continuation coverage (e.g., if the other coverage provides no benefits for preexisting conditions)...." 52 Fed.Reg. 22730 (1987).

3. Safeco Insurance Company of America is not a party to this appeal but has stipulated to being bound by the court's order.

ber of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay." H.R.Rep. No. 99–241, Part I, 99th Cong., 2d Sess. 44, *reprinted in* 1986 U.S.Code Cong. & Admin. News 622. As one solution to the problem, Congress amended Section 162 of the Internal Revenue Code "to deny the business tax deduction for a group health plan of any employer who fails to include in the plan a continuation option" to the employee, his spouse, and dependent children. *Id.* Congress fashioned the tax incentive to insure that health benefits for certain workers would not be put at risk or lost "due to an unexpected change in family status." S.Rep. No. 99–146, 99th Cong., 2d Sess. 363, *reprinted in* 1986 U.S.Code Cong. & Admin. News 322.

Section 300bb–1(a) states:

In accordance with regulations which the Secretary shall prescribe, each group health plan that is maintained by any State that receives funds under this chapter, by any political subdivision of such a State, or by any agency or instrumentality of such a State or political subdivision, shall provide, in accordance with this subchapter, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

A virtual mirror image of §§ 300bb–1 through 300bb–8 is found in the Internal Revenue Code, 26 U.S.C. § 162(k) with the prefatory tax language. Section 162(i)(2)(A) states:

No deduction shall be allowed under this section for expenses paid or incurred by an employer for any group health plan maintained by such employer unless all such plans maintained by such employer meet the continuing coverage requirements of subsection (k).

---

**4.** The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1161, contains the same continuation coverage rules and identical provisions as found in the Public Health Service Act at issue here and the Internal Revenue Code. *See, e.g.,* 29 U.S.C. § 1162(2), 100 Stat. 228.

Excluded from the requirement of § 300bb–1(a) are employers with fewer than twenty employees and group health plans maintained by the government of the District of Columbia or any territory or possession of the United States. 42 U.S.C. § 300bb–1(b)(1) and (2). To avoid a § 162(i) denial, "[t]he coverage must consist of coverage which, as of the time the coverage is being provided, is *identical* to the coverage provided under the plan to similarly situated beneficiaries under the plan with respect to whom a qualifying event has not occurred." 42 U.S.C. § 300bb–2(1); 26 U.S.C. § 162(k)(2)(A); 29 U.S.C. § 1162(1) (emphasis added).[4] The accompanying legislative history explains that identical coverage means, "[f]or example, if, under the plan, the covered employee had the right to select among several levels of coverage, the qualified beneficiary generally would be entitled to continue whatever level of coverage the employee had selected for the beneficiary prior to the qualifying event." S.Rep. No. 99–146, 99th Cong., 2d Sess. 366, *reprinted in* U.S.Code Cong. & Admin. News 325.

Section 300bb–3 defines a qualifying event in part for any covered employee[5]:

[T]he term "qualifying event" means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under this subchapter, would result in the loss of coverage of a qualified beneficiary:

(1) The death of the covered employee.

(2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.

Unless there are multiple qualifying events, coverage must extend for at least eighteen months from the date of the qualifying event.

---

**5.** "The term 'covered employee' means an individual who is (or was) provided coverage under a group health plan by virtue of the individual's employment or previous employment with an employer." 42 U.S.C. § 300bb–8(2).

■ Subsection 300bb–8(3)(A) defines a qualified beneficiary eligible for continuation coverage. It states:

> The term "qualified beneficiary" means, with respect to a covered employee under a group health plan, any other individual who, on the day before the qualifying event for that employee, is a beneficiary under the plan—
>
> (i) as the spouse of the covered employee, or
>
> (ii) as the dependent child of the employee.

A special rule for terminations and reduced employment underscores that a qualified beneficiary *includes the covered employee.* 42 U.S.C. § 300bb–8(3)(B).

■ With this statutory groundwork in place, we turn to the subsection at issue in this appeal, 42 U.S.C. § 300bb–2(2), the period of continuation coverage. Continuation coverage automatically terminates after the maximum period of coverage permitted, 18 months from the date of the qualifying event. 42 U.S.C. § 300bb–2(2)(A)(i). Otherwise, failure to make a timely payment of the premium, 42 U.S.C. § 300bb–2(2)(C), or the employer's ceasing to provide any group health plan to any employee, 42 U.S.C. § 300bb–2(2)(B), will terminate continuation coverage prior to the statutory deadline. In addition, continuation coverage ends on:

> The date on which the qualified beneficiary first becomes *after the date of the election*—
>
> (i) covered under any other group health plan (as an employee or otherwise)....

42 U.S.C. § 300bb–2(2)(D)(i) (emphasis added). When we read the underlined introductory language in conjunction with "covered under any other group health plan (as an employee or otherwise)," we believe the plain meaning of this subsection cannot be construed to include a spouse's preexisting group plan as a condition to terminate continuation coverage. Indeed, Mr. Oakley did not "first become" covered under his wife's policy after the qualifying event that resulted in his termination from the City's employment. Nor did Congress intend a covered employee's termination to become a condition triggering "other" coverage under a spouse's preexisting group plan. Consequently, only when we read the language of subsection (i) to refer to other coverage occurring after the qualifying event, do we preserve its plain meaning and give effect to Congress' intent.

Our interpretation is premised on contemporaneous congressional history and a reading of the statute as a whole. The accompanying House Conference Report explains the conference agreement on the duration of coverage provided to widows, divorced spouses, spouses of Medicare-eligible employees, dependent children who become ineligible, and for terminated employees:

> [a]s under the House bill and Title IX of the Senate amendment, no coverage need be provided *after* (1) failure to make timely payment under the plan, (2) the qualified beneficiary is covered under another group health plan as a result of employment, reemployment, or remarriage, and (3) the qualified beneficiary becomes entitled to Medicare benefits.

H.R. 3128, 99th Cong., 1st Sess., 131 Cong. Rec. 38,285–286 (1985) (emphasis added).

■ Thus, continuation coverage will terminate if the covered employee becomes covered by another policy because he obtains new employment, is reemployed, or remarries. None of these conditions is present here. While the district court believed "or otherwise" included the then-existing coverage of the employee's spouse, Congress intended this language to refer to subsequent events related to the employee's own employment or marital status. Consequently, a qualified beneficiary who receives coverage under the group health plan of a subsequent employer other than the employer providing the continuation coverage would no longer be eligible for continuation coverage. If a qualified beneficiary who is the spouse of a covered employee remarries, the continuation coverage under the covered employee's plan would terminate.

The subsection must be construed, moreover, in light of the entire legislative

scheme in which this component operates. *See* 2A C. Sands, *Southerland on Statutory Construction* § 46.05, at 90 (4th ed. 1984). The essence of continuation coverage, as found in § 300bb–1 and its revenue counterpart, is that coverage must be "identical" not only to that coverage which the employee had prior to the qualifying event but also to "the coverage provided under the plan to similarly situated beneficiaries under the plan with respect to whom a qualifying event has not occurred." 42 U.S.C. § 300bb–2(1). Although the district court believed Congress was concerned with providing minimal coverage and avoiding overlapping continuation coverage, 701 F.Supp. at 802, the statute speaks only in terms of identical coverage to be made available for a limited time to a covered employee. Hence, under this scheme, if the spouse of a covered employee could elect continuation coverage and pay the applicable premium not to exceed 102% of the premium cost, 42 U.S.C. § 300bb–2(3)(A), it is inconsistent that Congress would deny the same election to the covered employee.

Thus, while the contemporaneous legislative history does not specifically address the language at issue here, "covered (as an employee or otherwise)," we are satisfied that the overall statutory scheme contemplates continuation coverage to remain available to the covered employee despite a spouse's preexisting insurance policy. Surely the facts of this case illustrate the precise gap in coverage which troubled Congress. Mr. Oakley was terminated because of a catastrophic event which otherwise would have put his family at risk and jeopardized his treatment had the continuation rules not been in effect to maintain his rehabilitation for a limited period of time.

In light of Congress' overriding intent to address the crisis in health insurance coverage in the workplace, we are persuaded that § 300bb–2(2)(D)(i) does not provide the basis to terminate continuation coverage under the circumstances of this case. The proposed Treasury Regulations on continuation coverage requirements of group health plans, on which the district court relied, do not alter our reading. Until the agency completes formal rule-making and promulgates final regulations, the proposed rules, which the Internal Revenue Service has already deemed interpretive regulations, are unpersuasive. *See Telvest, Inc. v. Bradshaw*, 618 F.2d 1029, 1036, n. 10 (4th Cir.1980).

Based on our analysis of the statutory scheme, we conclude the district court erred as a matter of law in deciding § 300bb–2(2)(D)(i) terminated Mr. Oakley's eligibility to elect continuation coverage under the Plan. We therefore REVERSE the judgment and REMAND for entry of judgment in accordance with this opinion.