Mogretta McGEE, Appellant,

v.

Pete FUNDERBURG, as trustee for Plumbers & Pipefitters Local 665 Health and Welfare Fund, Appellee.

No. 93–1967.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1993.

Decided March 3, 1994.

Rehearing Denied April 15, 1994.

Counsel who presented argument on behalf of the appellant was Kenneth D. Koester of St. Louis, Missouri. James F. Koester of St. Louis, Missouri appeared on the brief.

Counsel who presented argument on behalf of the appellee was Janine M. Ames of Albuquerque, New Mexico. Jay Thomas Youngdahl of Little Rock, Arkansas appeared on the brief.

Before MAGILL, Circuit Judge, BRIGHT, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Mogretta McGee appeals the district court's entry of summary judgment in favor of Pete Funderburg, as trustee for Plumbers and Pipefitters Local 665 Health and Welfare Fund (the Fund) in her action to recover

continuation coverage health insurance benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (ERISA) as amended by the Comprehensive Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. §§ 1161–68 (COBRA). We reverse.

## I. BACKGROUND

Mogretta McGee's deceased husband, George McGee, was a member of the Plumbers and Pipefitters Union. As a benefit of membership, the Union provided him with health insurance. George McGee retired in July 1989. His retirement was a qualifying event entitling him to elect continuation health coverage under COBRA (COBRA coverage) for up to 18 months. Mr. McGee elected to continue coverage and paid his monthly premiums from July 1989 to March 1990. When George McGee was diagnosed with cancer in March 1990, and began to submit claims to the Fund for payment of medical expenses, the Fund terminated COBRA coverage.

George McGee was also a retired member of the United States military. As such, he was eligible for health care benefits under the Civilian Health and Medical Program of the Uniformed Services, 10 U.S.C. § 1071. (CHAMPUS). In denying coverage, the Fund contended that George McGee's CHAMPUS coverage terminated his COBRA eligibility because he was covered by another group health plan under 29 U.S.C. § 1162(2)(D)(i).[1]

George McGee continued to tender premium payments to the Fund from March 1990 until his death on June 6, 1990. The Fund refused to accept the payments. George McGee's widow, Mogretta McGee, submitted claims to the Fund for payment of bills in connection with her deceased husband's illness. The Fund refused to process the claims. Claims were also submitted to CHAMPUS, which paid 75% of covered claims, pursuant to the CHAMPUS policy. Under the Fund policy, George McGee would have been entitled to coverage of 80% of the first $5,000.00 in covered expenses and 100% thereafter. Mogretta McGee remains personally liable for $7,645.45.

Mogretta McGee filed this action to compel the Fund to pay the medical expenses under ERISA and COBRA. Both parties moved for summary judgment. The district court found that CHAMPUS is coverage "under any other group health plan" which triggers the termination of COBRA entitlement under 29 U.S.C. § 1162(2)(D)(i). The court further found that preexisting coverage defeats entitlement to COBRA coverage and that there were no significant gaps in coverage between the two policies at issue here. In making those findings, the district adopted the rationale of the Eleventh Circuit in *National Cos. Health Ben. Plan v. St. Joseph's Hosp., Inc.,* 929 F.2d 1558 (11th Cir.1991).

On appeal, Mogretta McGee argues that CHAMPUS coverage is not coverage "under any other group health plan" under section 1162. She urges us to disavow the district court's reliance on *National Cos.* and to follow instead the rationale of the Tenth Circuit in *Oakley v. Longmont,* 890 F.2d 1128 (10th Cir.1989), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990). In *Oakley,* the Tenth Circuit held that coverage under a preexisting group health plan does not defeat an employer's obligation to provide COBRA coverage. *Id.* at 1132. Mogretta McGee further argues that even if CHAMPUS qualifies as coverage "under any other group health plan" under section 1162(2)(D)(i), there are significant gaps in coverage which mean that George McGee was not truly "covered" by the plan. She

1. 29 U.S.C. § 1162 provides in relevant part:
   **(2) Period of coverage**
   The coverage must extend for at least the period beginning on the date of the qualifying event and ending not earlier than the earliest of the following:

        \*    \*    \*    \*    \*    \*

   **(D) Group health care plan or medicare entitlement**

   The date on which the qualified beneficiary first becomes, after the date of the election—
   **(i)** covered under any other group health plan (as an employee or otherwise) "which does not contain any exclusion or limitation with respect to any preexisting condition of such beneficiary", or
   **(ii)** [entitled to Medicare benefits]

also alludes to, but does not expressly rely on, an equitable estoppel argument.

## II. DISCUSSION

We review the grant of summary judgment de novo. *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir. 1992). The question before the district court, and this court on appeal, is whether the record, when viewed in light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

■ The parties make much of the language that defines the termination date as "[t]he date on which the qualified beneficiary first becomes, after the date of election—covered," 29 U.S.C. § 1162(2)(D), arguing that the dispositive inquiry is whether the other group coverage is preexisting. *Compare National Cos.*, 929 F.2d at 1568 (the existence of preexisting group health coverage makes a qualified beneficiary effectively ineligible for COBRA coverage) *with Oakley*, 890 F.2d at 1133 (COBRA coverage remains available to the covered employee despite a preexisting insurance policy). Although we find the Eleventh Circuit's position on the issue attractive,[2] we do not find the point at which other coverage is obtained to be particularly important to the issue before us. Of greater significance is the definition of "cover[age] under any other group health plan" and whether that definition, for ERISA purposes, includes CHAMPUS.

"COBRA was enacted in 1986 as a legislative response to 'reports of the growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay.'" *Gaskell v. Harvard Co-op Soc'y*, 3 F.3d 495, 498 (1st Cir.1993) (quoting H.R.Rep. No. 241, 99th Cong., 2d Sess. 44, *reprinted in* 1986 U.S.C.C.A.N. 42, 579, 622). "In 'an effort to provide continued access to affordable *private health insurance* for some of these individuals,'" without increasing the staggering budget deficits now facing the United States, COBRA compels employers that sponsor certain group health plans to provide qualified beneficiaries with the option of receiving self-paid continuation coverage for eighteen or thirty-six months after a qualifying event which would otherwise result in termination of coverage. *Gaskell*, 3 F.3d at 498 (emphasis added) (quoting H.R.Rep. No. 241, 99th Cong., 2d Sess. 44, *reprinted in* 1986 U.S.C.C.A.N. 622); 29 U.S.C. §§ 1161(a), 1162(2)(A). The period of entitlement to continuation coverage may be shortened on the occurrence of certain events, including the employer ceasing to provide any group health plan to any employee; failure of the qualified beneficiary to pay premiums; and coverage by another group health plan or entitlement to Medicare benefits. 29 U.S.C. § 1162(2)(B), (C), (D)(i) and (ii). ERISA, as amended by COBRA, is remedial legislation which should be liberally construed to effectuate Congressional intent to protect employee participants in employee benefit plans. *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344, 1356 (8th Cir.1980); *see also Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1984); *Rettig v. Pension Ben. Guar. Corp.*, 744 F.2d 133, 155 n. 54 (D.C.Cir.1984).

CHAMPUS provides free medical or dental care to active members of the military, military retirees, and their dependents. 10 U.S.C. § 1074. The purpose of CHAMPUS is "to create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and certain former members of those services, and for their dependents". 10 U.S.C. § 1071. It is similar to

2. We need not accept Ms. McGee's invitation to adopt the reasoning of the Tenth Circuit in *Oakley*. In *Oakley*, the Tenth Circuit held that an employee's coverage under his spouse's preexisting plan does not permit an employer to terminate continuation coverage under its plan. *Oakley*, 890 F.2d at 1132. The court concluded that the phrase "first becomes, after the date of election—covered", found in section 1162(2)(D), limits the terminating provision at issue to cases where group health coverage is acquired after an employee resigns from his job. *Id.* Thus, the provision does not apply to an employee who was covered by his wife's group health plan prior to his resignation; that employee first became covered prior to election of continuation coverage. *Id.*

other "benefits" granted to present and former members of the armed services as an earned entitlement in gratitude for service to their country and as a means of enhancing and making more attractive service in the armed forces of the United States. *See, e.g.,* 38 U.S.C. § 3451 (educational assistance). These entitlements include veteran employment preference by federal agencies or contractors, 38 U.S.C. § 4212; housing and small business loans, 38 U.S.C. §§ 3701, et seq.; certain free medical treatment at veteran's hospitals and nursing homes, 38 U.S.C. § 1710; and educational assistance, 38 U.S.C. § 3451.

As noted above, the thrust of COBRA is to ensure continuing private health insurance coverage. CHAMPUS simply does not fit this mold. CHAMPUS, as a governmental program, is excluded from ERISA. 29 U.S.C. § 1003(b)(1). Coverage under CHAMPUS does not involve the payment of a premium. The concept of "group insurance" implies a group pooling resources to distribute risk at lower cost. CHAMPUS does not involve risk distribution. The members of the "group"—its beneficiaries—do not contribute to the fund; the fund is supplied by the taxpayers as a benefit of and reward for military service. Furthermore, CHAMPUS does not provide benefits like private health insurance, it requires that a base hospital be used if one is nearby and its coverage is secondary. In these respects, CHAMPUS is unlike either the typical private policy of health insurance or Medicare.

Congress intended CHAMPUS and other benefits of military service to enhance, not diminish, the rights of a present or former member of the armed services. To hold that by virtue of military service, former members of the armed services are entitled to less protection than their nonveteran, nonmilitary counterparts, would not comport with Congressional intent under either CO-

BRA or CHAMPUS. We cannot say that Congress intended to include entitlements like CHAMPUS as "other health plan" coverage under 29 U.S.C. § 1162(2)(D)(i). Absent a clear expression by Congress, we will not limit COBRA's ameliorative goals by denying COBRA coverage to every retired member of the military.[3]

We also find it significant that Congress expressly set forth Medicare as a terminating event that is different from the coverage by "any other group health plan" terminating event. 29 U.S.C. § 1162(2)(D)(i) and (ii). CHAMPUS, which is likewise different than "any other group health plan" is nowhere mentioned in COBRA or its legislative history. It is a rudimentary axiom of statutory construction that "expressio unius est exclusio alterius;" the expression of one implies the exclusion of the other. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). Congress clearly identified eligibility for Medicare coverage as an event that triggered termination of COBRA coverage. Under the terms of the statute, or its legislative history, we can draw no such conclusion about CHAMPUS. Under the circumstances, we cannot assume that Congress simply forgot to include CHAMPUS coverage as a terminating event. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985) ("[t]he assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute'") (quoting *Nachman Corp. v. Pension Ben. Guar. Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980)). Again, absent clear Congressional expression to the contrary, we will not narrow COBRA's broad scope.

---

**3.** The infirmity of the Fund's position is dramatized by reference to veterans' benefits. Under 38 U.S.C. § 1710, veterans are entitled to free hospital, nursing home or domiciliary care and medical treatment for service-connected disabilities and for non-service-connected disabilities if indigent. At oral argument, counsel for the Fund stated that eligibility for medical care as a

veteran's benefit would also serve to terminate COBRA coverage. As set forth above, this further illustrates our conclusion that such an interpretation strains the meaning of the statute and does not comport with Congressional intentions in drafting either COBRA or the veterans' benefits statutes.

Even if we viewed CHAMPUS as "other group health plan" coverage, George McGee would nevertheless have been eligible for COBRA coverage because of a significant gap between coverage afforded in the Fund's plan and that afforded under the CHAMPUS preexisting plan. *See National Cos.*, 929 F.2d at 1571; *Brock v. Primedica, Inc.*, 904 F.2d 295, 297 (5th Cir.1990) (absent a gap in coverage, employee not entitled to COBRA coverage if preexisting plan exists). When a gap in coverage exists, "the employee is not truly 'covered' by the preexisting group health plan, as that term is used by Congress to effectuate its intent; the employee, despite his other coverage, will be liable personally for substantial medical expenses to his and his family's detriment." *National Cos.*, 929 F.2d at 1571. Here, the evidence shows that Mogretta McGee remains personally liable for over $7,500. Under the Fund's policy, she would have been personally liable for only $1,000 in medical expenses. This difference is, to us, significant.[4] Accordingly, even if CHAMPUS coverage were viewed as "other group health plan" coverage under CO-BRA, we find McGee would be entitled to COBRA coverage.

Last, although we need not reach the issue, we add that this case appears to be a candidate for application of the doctrine of equitable estoppel. *See National Cos.*, 929 F.2d at 1571–74. The Fund accepted George McGee's premiums for months, denied coverage when he became sick, and he relied to his detriment on the Fund's representations that COBRA coverage would be afforded. *Id.* at 1572–74.

## III. CONCLUSION

Accordingly, we reverse the district court's entry of summary judgment in favor of the Fund. We remand to the district court for entry of summary judgment in favor of Mogretta McGee and determination of amounts due under the Fund's COBRA coverage, subject to any CHAMPUS claim for reimburse-

ment of payments that exceed its liability as a secondary payor.

---

4. Also, although not relevant to George McGee's treatment, we find the requirement under CHAMPUS that a beneficiary use a base hospital if one is nearby could also result in a significant gap in coverage.