927 F.Supp. 352 (1996)
Bonnie L. GEISSAL,[1] Plaintiff,
v.
MOORE MEDICAL CORP., et al., Defendants.
No. 4:94 CV 1263 DDN.
United States District Court, E.D. Missouri, Eastern Division.
March 19, 1996.
*353 *354 S. Sheldon Weinhaus, Weinhaus and Dobson, St. Louis, MO, for plaintiff.
Bradley J. Washburn, Bearden and Breckenridge, St. Louis, MO, for defendants.

MEMORANDUM
NOCE, United States Magistrate Judge.
This matter is before the Court upon the plaintiff's motion for partial summary judgment (Doc. No. 20). The parties have consented to the jurisdiction to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).
This case involves the continuation coverage provisions of the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Comprehensive Omnibus Budget Reconciliation Act of 1986 (COBRA), 29 U.S.C. § 1001 et seq. Plaintiff is Bonnie L. Geissal, wife and personal representative of the estate of James W. Geissal, who is now deceased. Defendants are Moore Medical Corporation, Group Benefit Plan of Moore Medical Group and Herbert Walker. On plaintiff's motion, Sedgwick Nobel Lowndes, originally named as a defendant, was dismissed without prejudice by order of the Court on November 8, 1994.
Count I alleges that defendants violated COBRA by failing to provide continuation insurance coverage once Moore terminated Geissal's employment. Count II alleges that defendants are estopped from denying coverage because at the time of Geissal's termination, defendants made misrepresentations that made him believe that he was entitled to COBRA continuation and would have insurance coverage. Plaintiff alleges that Geissal relied on these representations and continued to pay the amount required for COBRA continuation. Count III alleges waiver, in that, by accepting Geissal's payments, defendants waived any differing construction or interpretation of ERISA plan documents. Count IV, which is not the subject of the pending motion, alleges that Herbert Walker, as plan administrator, failed to provide requested plan documents as required by statute.
Plaintiff has moved for partial summary judgment on the issue of defendants' obligation to provide COBRA coverage.
The following facts are without dispute:

FACTS
1. On July 16, 1993, Moore Medical Corp. (Moore or Moore Medical) terminated James Geissal. (Geissal Affidavit, filed June 5, 1995, at ¶ 8; Defendants' Answer, filed July 28, 1994.) At the time of his termination, Geissal was 62 years old and had cancer. (Geissal Aff. at ¶¶ 2, 5.) During his employment at Moore, Geissal was a participant in a health benefits plan, the Group Benefit Plan of Moore Medical Corp., sponsored by Moore for its employees. (Geissal Aff. at ¶ 4; Complaint at ¶ 9; Answer at ¶ 9.)
2. Moore Medical Corp. is an employer and the plan sponsor, within the meaning of 29 U.S.C. § 1002(5) and (16)(B), of defendant Group Benefit Plan (Plan) of Moore Medical Corp. The plan is an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1). Defendant Group Benefit Plan of Moore Medical Corp. provides for the payment and reimbursement to plan participants of various medical expenses and is a group health plan as defined in 29 U.S.C. § 1167(1). (Complaint at ¶¶ 3, 4; Answer at ¶¶ 3, 4.)
3. While Geissal was employed at Moore, his wife, Bonnie, was employed by Trans World Airlines (TWA). (Complaint at ¶ 11; *355 Answer at ¶ 11; Geissal Aff. at ¶ 6.) By reason of Bonnie Geissal's employment at TWA, James Giessal was a covered dependent eligible for coverage under the health insurance policy issued by Aetna Life Insurance Company, which was the health provider or third-party administrator under the TWA plan provided by TWA for its employees. (Geissal Aff. at ¶ 6, 15.) Geissal's coverage through his wife's plan preceded Geissal's termination by Moore. (Complaint at ¶ 11.)
4. Upon Geissal's termination at Moore Medical, Geissal received a notice of his right under COBRA to continue health insurance coverage under Moore's benefit plan. He accepted Moore's offer and elected to continue receiving group health coverage under Moore's Plan. He began making premium payments. (Geissal Aff. at ¶ 14.) The defendant accepted the payments. Approximately six months after his termination, by letter dated January 27, 1994, defendants informed Geissal that they had determined he was not entitled to COBRA coverage because he was already covered under a group policy with Aetna. (Geissal Aff. at ¶ 15.) Geissal was told that the premiums he had already paid would be returned and that those who provided him with medical care during that period would not be paid by the Plan and their billings would be returned to those who had provided medical care to him. (Geissal Aff. at ¶ 15.)
5. Moore's plan had an annual deductible of $150. It also provided for a lifetime maximum amount of benefits. (Geissal Aff. at ¶ 5.) TWA's plan through Aetna had an annual deductible of $500 per year per person and also provided a lifetime maximum amount of benefits. (Geissal Aff. at ¶ 6.)
6. At the time Geissal was terminated, he requested and received a service letter pursuant to Missouri Rev.Stat. § 290.140. (Geissal Aff. at ¶¶ 8, 10b.) At the time he was terminated, he considered whether he should consult an attorney to investigate what rights and claims he might have against Moore because he felt he was unfairly terminated. (Geissal Aff. at ¶ 10.) Geissal decided not to do so, because his main concern was that he have full and adequate health insurance. (Geissal Aff. at ¶ 10a.) Moore representatives encouraged him to make the COBRA election, which did much to assuage his feelings about his discharge. (Geissal Aff. at ¶ 10b.) At about this time, and shortly after the issuance of the service letter, the Plan or its reinsurer were making large payments for medical care provided to Geissal prior to his termination. (Geissal Aff. at ¶ 10c.) Because he was offered the COBRA continuation coverage, Geissal did not look for another insurance carrier. (Geissal Aff. at ¶ 11.)

DISCUSSION
Plaintiff has moved for partial summary judgment on the issue of defendants' obligation to provide COBRA coverage. Plaintiff states that Counts I, II and III are related to that issue. However, plaintiff has not argued the issue of waiver, which is the basis for Count III. Plaintiff states that a finding of liability on Count I would moot Counts II and III.
This Court must grant summary judgment if, based upon the pleadings, admissions, depositions and affidavits, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corporation v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Board of Education, Island Trees Union Free School Dist. v. Pico, 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). The moving party must initially demonstrate the absence of an issue for trial. Celotex Corporation, 477 U.S. at 323, 106 S.Ct. at 2552-53. Any doubt as to the existence of a material fact must be resolved in favor of the party opposing the motion. Board of Education v. Pico, 457 U.S. at 863, 102 S.Ct. at 2806.
Nevertheless, once a motion is properly made and supported, the non-moving party may not rest upon the allegations in his pleadings but must instead set forth specific facts showing that there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e); Buford v. Tremayne, 747 F.2d 445, 447 (8th Cir.1984). Summary judgment must be granted to the movant if, after adequate time for discovery, the non-moving party fails to *356 produce any proof to establish an element essential to the party's case and upon which the party will bear the burden of proof at trial. Celotex Corporation, 477 U.S. at 322-24, 106 S.Ct. at 2552-53.
In response to the motion, defendants have raised several issues. First, defendants argue that the plaintiff lacks standing to maintain the instant lawsuit because plaintiff has no economic damages. Based upon the discovery supplied by plaintiff and Aetna, which was the group insurance carrier under the spouse's preexisting health benefit plan, defendants assert that all of plaintiff's medical bills for "covered expenses" during the relevant period were paid by Aetna. Therefore, defendants claim, plaintiff has no claim for compensatory damages or other type of damages because he has suffered no damages. The Court nevertheless concludes that plaintiff has standing to bring this lawsuit for relief other than compensatory damages. See 29 U.S.C. § 1132(a)(1).
Second, defendants argue that a necessary party needed for complete adjudication pursuant to Federal Rule of Civil Procedure 19(a) is not before the Court. Defendants argue that the real party in interest is Aetna, the health provider for the TWA plan, and TWA, Bonnie Geissal's employer. Defendants argue that the question is whether Moore or Aetna should pay for the covered medical expenses during the COBRA continuation period. Defendants argue that if the Court were to hold that Moore should have provided COBRA coverage to Geissal and that such policy was primary to Aetna's policy, then Aetna should be reimbursed by Moore for all "covered expenses" incurred by Geissal during the COBRA period. Further, the plaintiff would owe the Moore health plan $2,673.18 for 18 months of COBRA coverage. They argue that there is a possibility of a double recovery for plaintiff.
Plaintiff, in response, argues that defendants have waived the defense of failure to join a necessary party. However, because this defense can be raised as an issue at a trial on the merits, see Federal Rule of Civil Procedure 12(h)(2), the question of whether there is a genuine issue for trial with regard to this defense can appropriately be raised on a motion for summary judgment. See Kornblum v. St. Louis County, 48 F.3d 1031, 1038 (8th Cir.), opinion vacated on other grounds, 72 F.3d 661 (8th Cir.1995).
The question of whether a party must be joined is examined under Federal Rule of Civil Procedure 19(a), which states in pertinent part:
A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
Aetna is not a necessary party under the first subsection of Rule 19(a), because complete relief may be granted between Moore and plaintiff without Aetna's joinder. Moore may be required to continue coverage, in consideration for premiums paid. Because Aetna has already paid claims, its joinder is not necessary in order for plaintiff to obtain relief from Moore.
Therefore, defendants must rely on Rule 19(a)(2), which requires a finding that Aetna "claims an interest relating to the subject matter of the action." Assuming that Aetna "claims" such an interest, the remaining requirements of Rule 19(a)(2) are not met. Aetna's absence from this case will not impair or impede its ability to protect that interest. If the Court decides that Moore should have provided COBRA coverage, Aetna could decide what future recourse, if any, to take. The possibility of potential litigation is irrelevant to the criteria of Rule 19. "The focus is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person." *357 LLC Corp. v. Pension Benefit Guaranty Corp., 703 F.2d 301, 305 (8th Cir.1983). In addition, a determination of the case in the absence of Aetna will not subject Moore to the risk of inconsistent or double obligations.
Third, defendants argue that the Court cannot grant relief against them unless it finds that the Moore health plan was primary to the Aetna health plan. This determination can be made upon adequate discovery, without Aetna's presence as a party.
The cardinal issue between the present parties is whether James Geissal's preexisting (Aetna) insurance coverage made him ineligible for continuation coverage with the Fund upon his termination. The resolution of that issue is one of statutory interpretation. ERISA, as amended by the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161-1168, requires employers to offer continuation coverage to certain categories of departing employees. COBRA specifies the circumstances which entitle an employer to terminate continuation coverage. The termination provision at issue in this case is as follows:
The coverage must extend for at least the period beginning on the date of the qualifying event and ending not earlier than the earliest of the following:
* * * * * *
(D) The date on which the qualified beneficiary first becomes, after the date of the election 
(i) covered under any other group health plan (as an employee or otherwise) `which does not contain any exclusion or limitation with respect to any preexisting condition of such beneficiary.'
29 U.S.C. § 1162(2)(D)(i).
Plaintiff argues that the plain language of the statute mandates that only other group coverage which is obtained after the date of the election can preclude COBRA entitlement and selection. Therefore, because Geissal's coverage under his wife's plan existed before he elected the COBRA continuation plan, plaintiff argues that James Geissal is entitled to continuation coverage under the Moore Plan.
In interpreting a statute, a Court is required to look to the plain language of the statute, give significance to the statute as a whole, and to examine the purpose and intent of a statute when deciding what its terms mean. Commissioner of Internal Revenue v. Engle, 464 U.S. 206, 217, 104 S.Ct. 597, 604, 78 L.Ed.2d 420 (1984); Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 591-92, 7 L.Ed.2d 492 (1962); National Labor Relations Board v. Lion Oil Co., 352 U.S. 282, 289-90, 77 S.Ct. 330, 334-35, 1 L.Ed.2d 331 (1957); United States Department of Health and Human Services v. Smith, 807 F.2d 122, 126-27 (8th Cir.1986).
Five Circuit Courts of Appeals have considered whether COBRA authorizes an employer to withhold continuation coverage when the departing employee has dual coverage throughout his employment and therefore has a continuing source of coverage when he resigns or is terminated. See Lutheran Hospital of Indiana, Inc. v. Business Men's Assurance Co. of America, 51 F.3d 1308 (7th Cir.1995); McGee v. Funderburg, 17 F.3d 1122 (8th Cir.1994); National Companies Health Benefit Plan v. St. Joseph's Hospital of Atlanta, Inc., 929 F.2d 1558 (11th Cir.1991); Brock v. Primedica, Inc., 904 F.2d 295 (5th Cir.1990); Oakley v. City of Longmont, 890 F.2d 1128 (10th Cir.1989), cert. denied, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).
The Tenth Circuit was the first circuit to address the issue in Oakley.[2] At the time of plaintiff's termination, he had insurance under his employer and was also a dependent under his wife's group health plan. However, his wife's plan, unlike his employer's plan, did not cover the costs of the medical treatment he needed. The court found that the plain meaning of the statute "cannot be construed to include a spouse's preexisting group plan as a condition to terminate continuation coverage." Oakley, 890 F.2d at 1132. The court read the language of subsection (i) to refer to other coverage occurring *358 after the qualifying event. Id. (emphasis added).
In Brock, the plaintiff elected continuation coverage when she was terminated. Both before and after her termination, she also was covered as a dependent on her husband's group health insurance plan. The Fifth Circuit held that plaintiff was not entitled to continuation coverage under COBRA. Brock, 904 F.2d at 297.
In National Companies, the plaintiff elected, upon his resignation, to continue receiving group health coverage under his employer's plan. Both before and after his resignation, he was also covered under the group health plan of his wife's employer. Plaintiff had paid premiums and the premiums were accepted. The Eleventh Circuit held that an ERISA provider is not required to offer continuation coverage to an employee or his dependents who are covered under a preexisting group health plan. National Companies, 929 F.2d at 1566. The court held that
it is immaterial when the employee acquires other group health coverage; the only relevant question is when, after the election date, does that other coverage take effect. In the case of an employee covered by preexisting group health coverage, the terminating event occurs immediately; the first time after the election date that the employee becomes covered by a group health plan other than the employer's plan is the moment after the election date. In effect, such an employee is ineligible for continuation coverage.
Id. at 1570.
In McGee, the plaintiff's deceased husband had health insurance as a benefit of his membership in a union. Upon his retirement, he elected continuation health coverage under COBRA and paid his monthly premiums. When he was diagnosed with cancer and began submitting claims for payment of medical expenses, the Fund terminated COBRA coverage on the basis that he was covered by another group health care plan. McGee, 17 F.3d at 1123. The district court adopted the rationale of the Eleventh Circuit in National Companies. On appeal, the Eighth Circuit found the Eleventh Circuit's reasoning "attractive," but concluded that it need not decide the question of whether preexisting coverage defeated the employee's eligibility for continuation coverage. Id. at 1124.
In Lutheran, plaintiff was covered under both her employer's and her husband's group health plans. Plaintiff had a neurological disorder. She was then laid off. Her employer's insurance company told her she would not be eligible for COBRA coverage because of her preexisting coverage under her husband's plan. Lutheran, 51 F.3d at 1310 & n. 1. The court held that the clear language of the statute provides that an employee loses the right to continuation coverage only if he chooses after the election date to accept coverage under another group health plan. Id. at 1312. Therefore, preexisting coverage would not make an employee ineligible for COBRA coverage. "The statutory distinction between preexisting and after-acquired health care coverage is reasonable and facilitates the preservation of the beneficiary's health care status quo." Id.
The undersigned finds the reasoning of the Eleventh Circuit persuasive and therefore holds that James Geissal's preexisting coverage under his wife's plan constitutes coverage "under any other group health plan" for purposes of 29 U.S.C. § 1162(2)(D)(i).
The fact that Geissal had other coverage is not entirely dispositive, however. According to the plain language of the statute, if the other coverage contains an "exclusion or limitation with respect to any preexisting condition of [the] beneficiary," the employee may be eligible for continuation coverage.
The question is whether there was a gap between the coverage offered by the employer and that offered by the other insurance. Circuit Courts of Appeal have examined the relative coverage available to the beneficiary under both plans.
In Oakley, the plaintiff sought coverage for rehabilitation therapy for a brain injury. This treatment was covered under the plan provided by his former employer but was not covered under his spouse's plan. Oakley, 890 F.2d at 1130. The court held that plaintiff's coverage under his spouse's plan did not *359 render him ineligible for continuation coverage from his former employer. In dicta, the Tenth Circuit noted that there was a gap between plaintiff's coverage under his employer's plan and his coverage under his wife's plan. Id. at 1133. The court noted that "the facts of this case illustrate the precise gap in coverage which troubled Congress;" in other words, forcing the plaintiff's family to pay for the treatment of his catastrophic injury would put plaintiff and his family at risk and jeopardized his treatment. Id. at 1133.
In Brock, the Fifth Circuit held that preexisting coverage rendered a departing employee ineligible for continuation coverage. However, the court also noted that there was no "gap" in plaintiff's coverage under the two plans. Specifically, the court noted that plaintiff was covered under both plans for the type of medical problem for which she later claimed benefits. Brock, 904 F.2d at 297.
The Eleventh Circuit showed a similar concern in National Companies when it examined the character of plaintiff's coverage under his former employer's plan and under his spouse's preexisting plan. National, 929 F.2d at 1571. While the court held that an employer was not required to provide continuation coverage to an employee who was covered under a preexisting group health plan, it also held that an employee may be entitled to receive continuation coverage under his previous employer's plan, if there is a significant gap between the employer's plan and the preexisting plan. Id. at 1571. If there is a significant gap in coverage such that the employee would become personally liable for substantial medical expenses to his family's detriment, the employee would not truly be "covered" under the preexisting plan. Id. The court noted that Congress' purpose in enacting COBRA was to respond to "the growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay." National, 929 F.2d at 1567 (quoting H.R.Rep. No. 241, 99th Cong., 2d Sess. 44, reprinted in 1986 U.S.C.C.A.N. pp. 42, 579, 622). The court concluded that denial of continuation coverage when the employee's only other coverage does not truly cover the employee would frustrate Congress' intentions. Id.
In McGee, the Eighth Circuit noted in dicta that a significant gap between coverage afforded under the employer's plan and that afforded under the preexisting plan would entitle plaintiff to COBRA coverage. McGee, 17 F.3d at 1126. The court quoted National for the proposition that when a gap in coverage exists, then the employee is not truly covered by the preexisting group health plan. Id. The court found that there was a significant gap because plaintiff remained personally liable for more than $7,500 under the preexisting plan, while under her employer's plan she would have been personally liable for only $1,000 in medical expenses. Id.
In this case, plaintiff maintains that there is a significant gap between the coverage provided by Moore and that provided by the preexisting plan because (1) Moore's plan had an annual deductible of $150 for covered medical services and treatments that Geissal needed, while Aetna's plan had an annual deductible of $500 per year per person; (2) Moore's plan had a lifetime maximum only as to payments made by the Plan and Aetna's plan had a lifetime maximum as to payments made by Aetna; therefore, before his termination Geissal had the benefit of two maximums; (3) coverage of some kinds of care were different, with coverage under Moore's plan being more extensive. (Affidavit of James Geissal, filed June 5, 1995, at ¶¶ 5-7.)
Plaintiff does not allege that James Geissal suffered from a preexisting condition that was not covered under Aetna's plan. Plaintiff does not allege that Geissal's condition was not covered by Aetna. Although the record is unclear about the exact amount of benefits paid or the extent of coverage, there is no dispute that benefits were in fact paid. The only difference between the two policies that Geissal asserted in his affidavit is the amount of deductible. This is not a significant gap. See National, 929 F.2d at 1571. A significant gap in coverage exists when coverage is excluded or limited for certain types of conditions or treatments. See, e.g., Brock v. Primedica, Inc., 904 F.2d 295, 297 (5th Cir.1990). Plaintiff has provided *360 no evidence that coverage under the TWA plan was excluded or limited for Geissal's condition.
Plaintiff argues that, even if Moore was not required to provide continuation coverage to James Geissal, it is estopped from denying such coverage. See National, 929 F.2d at 1571-74. Plaintiff alleges a federal common law claim of estoppel in Count II.[3]
The elements of equitable estoppel, as defined by federal common law, are that (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation. Heckler v. Community Health Services, Inc., 467 U.S. 51, 59, 104 S.Ct. 2218, 2223-24, 81 L.Ed.2d 42 (1984); National, 929 F.2d at 1572; United States v. Aetna Casualty & Surety Co., 480 F.2d 1095, 1099 (8th Cir.1973).
Plaintiff argues that Geissal was offered continuation coverage, (Aff. at ¶¶ 10b, 12) and that he relied upon that offer to his detriment. (Aff. at 10, 11). He stated that he did not look for other insurance, knowing how weak TWA was financially and how he needed more than what TWA provided, and he did not pursue investigation as to defendants' possible misconduct in terminating him.
In National, the court found that the employer had misrepresented to plaintiff that he was entitled to and would receive continuation coverage, in a memorandum explaining continuation coverage; that by accepting premium payments for four months, the company continually assured plaintiff that the Plan was providing him with coverage; that Plan representatives knew or believed, prior to plaintiff's resignation, that plaintiff was ineligible for continuation coverage because of his preexisting coverage; that plaintiff relied on the company's memorandum notifying him of his rights with respect to continuation coverage; that plaintiff was unaware of the true facts because there was no evidence that plaintiff knew he was not entitled to continuation coverage; and that plaintiff relied on those representations by deciding not to accept coverage under another policy when he learned he would be entitled to continuation coverage. In addition, plaintiff incurred personal liability for $6,700 in medical expenses he would not have incurred had he maintained dual coverage. National, 929 F.2d at 1573-74.
In McGee, McGee elected, upon retirement, to continue coverage and he paid monthly premiums. When he was diagnosed with cancer and began to submit claims for payment of medical expenses, his employer's plan terminated COBRA coverage. Id. at 1123. McGee continued to tender premium payments until he died, but the Fund refused to accept the payments. Id. The Eighth Circuit indicated in dicta that the doctrine of equitable estoppel might be applicable to such a case, in which the employer's plan accepted the employee's premiums for months, denied coverage when he became sick, and he relied to his detriment on the Fund's representations that COBRA coverage would be afforded. McGee, 17 F.3d at 1126.
In this case, there is no dispute that defendants told Geissal he was entitled to continuation coverage. In addition, defendants accepted Geissal's premium payments for about six months, from the date of termination, July 16, 1993, until he was notified on January 27, 1994, that Moore had determined he was not entitled to COBRA coverage. There is no evidence that Plan representatives previously knew he was covered by a preexisting policy. However, the Court will assume that the defendants had constructive knowledge because of their obligation to know every ERISA provision and to determine employees' rights. National, 929 F.2d at 1573 n. 15. There is no dispute that Geissal relied on the *361 company's notification that he was entitled to continuation coverage. There also is no dispute that Geissal was unaware of the true facts, e.g., that the preexisting policy disqualified him from COBRA coverage.
However, while plaintiff asserts that Geissal relied on those representations, there is no evidence that he relied on them to his detriment. Plaintiff has not shown that Geissal suffered any economic loss. See National, 929 F.2d at 1574 n. 16. Geissal stated that, although he gave some thought to whether he should consult an attorney to investigate what rights and claims he may have had against Moore concerning his termination and he knew that he could complain to government agencies about his termination, he decided not to do so because his main concern was that he have full and adequate health insurance. (Geissal Aff. at ¶¶ 10 and 10a.) He further stated that Moore representatives encouraged him to make the COBRA election offered by Moore, and that conduct did much to assuage his feelings about his discharge, so much so that he decided against taking any investigative steps beyond requesting a service letter. (Geissal Aff. at ¶ 10b.) Geissal stated that he later learned that, by the time Moore informed him that he was not entitled to COBRA coverage, his termination-related claims were time-barred. (Geissal Aff. at ¶ 16.)
Geissal's statements are insufficient to show detrimental reliance. There is no evidence that Geissal accepted the COBRA coverage as part of an express agreement not to take legal action against Moore concerning his termination. Geissal's statements of inchoate claims are speculative and insufficient to withstand summary judgment. Fed. R.Civ.P. 56(e).
Geissal also states that, had he known he would be limited to coverage only through his wife's policy, he would have looked for additional coverage. (Geissal Aff. at ¶ 11.) This statement is speculative at best concerning the outcome of any such search for other coverage, and the statement is insufficient to withstand summary judgment. Smith v. Hartford Insurance Group, 6 F.3d 131, 137 (3d Cir.1993); Fed.R.Civ.P. 56(e). This is not a case where Geissal found other insurance coverage but decided not to purchase it because of Moore's representation about COBRA continuation coverage. See National, 929 F.2d at 1574.
For these reasons, the plaintiff's motion for partial summary judgment will be denied. The material facts are undisputed and defendants are entitled to judgment on Counts I and II as a matter of law. Therefore, judgment will be entered in favor of the defendants on Counts I and II. Madewell v. Downs, 68 F.3d 1030, 1048-50 (8th Cir.1995).
Count III alleges that the defendants, by accepting Geissal's payments, waived any differing construction or interpretation of plan documents. Plaintiff did not move for summary judgment on that ground and the parties have not argued it. The doctrines of waiver and estoppel are distinct. Karlen v. Ray E. Friedman & Co. Commodities, 688 F.2d 1193, 1197 (8th Cir.1982). See Buder v. Fiske, 174 F.2d 260, 267-68, reh'g denied, 177 F.2d 907 (8th Cir.1949). Plaintiff also did not seek summary judgment on Count IV.
Signed this 19th day of March, 1996.
NOTES
[1] Upon the death of plaintiff James W. Geissal, Bonnie L. Geissal, personal representative of the estate of James W. Geissal, was substituted on November 1, 1995, as party plaintiff. Fed. R.Civ.P. 25(a). References to plaintiff in the masculine in this Memorandum are to decedent.
[2] The actual provision at issue in Oakley was 42 U.S.C. § 300bb-2(2)(D)(i), which covers public employees. However, it is identical to the provision at issue in this case.
[3] The Eighth Circuit has not recognized a federal common law action for equitable estoppel, although it has been suggested that it would do so in certain circumstances. Slice v. Sons of Norway, 34 F.3d 630, 633-34 (8th Cir.1994); Coonce v. Aetna Life Insurance Co., 777 F.Supp. 759, 769-70 (W.D.Mo.1991). See also McGee, 17 F.3d at 1126.