United States Court of Appeals,

Fifth Circuit.

No. 93-2859.

Victoria TEWELEIT, Plaintiff,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, Defendant-Counter
Defendant-Appellee,

v.

The TEXAS MUNICIPAL GROUP BENEFITS RISK POOL, Defendant-Counter
Plaintiff-Appellant.

Feb. 7, 1995.

Appeal from the United States District Court from the Southern
District of Texas.

Before JONES and STEWART, Circuit Judges, and DUPLANTIER[*], District
Judge.

EDITH H. JONES, Circuit Judge:

This is a dispute between an insurance company, Hartford Life
& Accident Insurance Company (Hartford), and an employer, Texas
Municipal League Group Benefits Risk Pool (TML), revolving around
the interpretation of the word "covered" under a section of the
Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA)
amendments to the Employee Retirement Income Security Act (ERISA).
42 U.S.C. § 300bb-2(2)(D) (1986). The COBRA amendments were
enacted generally to preserve employees' medical insurance as they
move from job to job. Hartford interpreted the statutory term
"covered" to mean that after its insured, the daughter of a TML

[*]District Judge of the Eastern District of Louisiana,
sitting by designation.

employee, got married and signed on to her new husband's insurance policy, Hartford's COBRA responsibility terminated even though the young woman was indisputably not "covered" on the new policy for a pre-existing condition. The district court agreed with Hartford's interpretation and granted summary judgment against TML, which had given contrary advice. We disagree with Hartford's interpretation of the mandated scope of COBRA coverage and therefore reverse and remand.

BACKGROUND

In 1990, Victoria Teweleit (Victoria) sued Hartford, and later TML, for refusing to pay her about $30,000 in insurance benefits for follow-up care on a heart-lung transplant she had received. Hartford and TML sought indemnity against each other. Victoria settled her suit against Hartford for $181,000 and against TML for $50,000.

The indemnity claims went forward. Shortly before trial, the district court notified the parties that he would determine the propriety of Hartford's termination of Victoria's health insurance, while the jury would find the relevant facts that precipitated the termination. TML does not challenge the jury's factual findings on appeal, and we accept them as true. The jury's findings and additional undisputed facts follow.

In 1988, Victoria Cooley was a dependent adult child covered under her father's insurance policy through his employer TML. Victoria underwent a costly heart and lung transplant that was covered under Hartford's policy. When, in late 1988, Victoria

2

planned to marry Mr. Teweleit, she needed to ensure that medical expenses relating to the transplants would still be covered after her marriage. Mr. Teweleit's policy excluded coverage for pre-existing conditions for the first year.

Victoria's mother was verbally assured by TML personnel that under COBRA, Victoria would be entitled to continuing coverage for her pre-existing conditions within her father's plan even if she married and became covered under her husband's policy.[1] Hartford did not participate in giving Victoria's mother this information. Relying on these representations, Victoria was married on December 17, 1988, and signed her COBRA forms that same day. She became a named insured under her husband's policy effective January 4, 1989.

Hartford discovered in May, 1988 that Victoria was insured under both plans and promptly cancelled her COBRA continuing coverage. Hartford's asserted authority for cancelling Victoria's COBRA coverage was 42 U.S.C. § 300bb-2(2)(D), a section that allows the insurer to terminate continuing COBRA coverage when the insured first becomes "covered" under any other group health plan. Concluding that when Victoria became a named insured under her new husband's health plan, she was "covered" for purposes of COBRA, Hartford refused to pay approximately $30,000 in medical bills

---

[1]In its Findings of Fact and Conclusions of Law, the district court found that TML personnel also told Victoria that she had to elect COBRA coverage before the wedding. This was incorrect. Victoria could have waited up to sixty days after getting married to elect continuing coverage. 42 U.S.C. § 300bb-5(1). Ironically, if Victoria had availed herself of the 60-day wait, she would have fallen within the retroactivity period of the amendment discussed *infra.*

related to her pre-existing condition.

The district court agreed with Hartford's reasoning and held that Hartford justifiably cancelled Victoria's coverage. Adopting the jury findings that (1) TML misrepresented to Victoria her right to COBRA coverage and (2) Victoria relied upon these representations to her detriment, the district court ordered TML to indemnify Hartford for its costs and fees reasonably incurred in defending and settling with Victoria.[2]

On appeal, TML argues that, because Victoria's husband's policy excluded coverage of her pre-existing condition, Victoria was not truly "covered" under any other group health plan and thus Hartford's termination of COBRA coverage was wrongful. TML seeks indemnity for its costs and fees incurred in defending and settling with Victoria.

### DISCUSSION

Resolution of this case turns on the meaning of the word "covered" in its statutory context. The version of the COBRA section applicable to this case[3] allows an insurer to terminate coverage on:

---

[2]The award consisted of $278,923.75 in attorneys fees, $61,224.84 in costs and expenses, and $180,000 for reimbursement of Hartford's settlement with Victoria, for a grand total of $520,148.59.

Thus by the conclusion of this litigation the refusal to pay $30,000 in medical bills had resulted in expenditures of well over $600,000, a factor of more than twenty to one. The health care system is not the only one which needs "fixing".

[3]This section was amended in 1989, discussed *infra.*

4

"The date on which the qualified beneficiary first becomes, after the date of the election—

(i) *covered* under any other group health plan (as an employee or otherwise)...."

42 U.S.C. § 300bb-2(2)(D) (1986) (emphasis added). The parties dispute whether *covered under any other group health plan* means that the beneficiary of COBRA coverage (a) generally has or obtains some second policy of health insurance, or (b) has or obtains a second policy with substantially the same benefits as the initial policy. Hartford argues that (a) is correct; TML argues that (b) is correct. We agree with TML.

The COBRA amendments to ERISA were enacted in response to "reports of the growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay." H.R.Rep. No. 241, 99th Cong., 2d Sess. 44, *reprinted in* 1986 U.S.C.C.A.N. 42, 579, 622. The effect of COBRA is to require group health plan sponsors "to provide continuing coverage on an individual basis for qualified beneficiaries until, among other triggering events, those beneficiaries become covered under another group health plan, as an employee or otherwise." *Brock v. Primedica, Inc.,* 904 F.2d 295, 296 (5th Cir.1990) (citing 29 U.S.C. § 1162(2)(D)(i)).[4]

Although, for reasons to be explained, Hartford contends the cases are distinguishable, three circuits have construed this COBRA

---

[4]29 U.S.C. § 1162(2)(D)(i) and 42 U.S.C. § 300bb-2(2)(D)(i) are identical provisions. The former governs the population at large while the latter governs public employees.

5

provision. *See Oakley v. City of Longmont,* 890 F.2d 1128 (10th Cir.1989), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990); *Brock v. Primedica, Inc.,* 904 F.2d 295 (5th Cir.1990), and *National Co. Health Benefit Plan v. St. Joseph's Hosp.,* 929 F.2d 1558 (11th Cir.1991). These opinions are worth a brief recapitulation.

*Oakley* was the first circuit court case to examine this COBRA provision. Oakley was insured by both his employer and his wife's employer before he became disabled in an automobile collision. He elected to purchase COBRA continuing coverage from his employer because his insurance plan covered certain rehabilitation expenses not provided for by his wife's plan. Later, Oakley's insurance company terminated his COBRA coverage because it asserted he was "covered" by his wife's plan. The Eleventh Circuit rejected this construction of section 300bb-2(2)(D)(i). *Oakley,* 890 F.2d at 1132. The court's analysis focused primarily on the timing of the second policy and concluded that because Oakley did not "first become" covered under his wife's policy after he left his job, his insurance company did not have the right under the statute to terminate his COBRA coverage. *Id.* The court summarized its holding thus:

> "[W]e are satisfied that the overall statutory scheme contemplates continuation coverage to remain available to the covered employee despite a spouse's preexisting insurance policy. *Surely the facts of this case illustrate the precise gap in coverage which troubled Congress.*"

*Id.* at 1133 (emphasis added).

Chief Judge Politz relied on *Oakley* in deciding *Brock.* Mrs.

6

Brock was insured by her employer and by her husband's policy. When Brock terminated her employment, she purchased COBRA continuing coverage. Later, her insurance company denied her claims for medical bills she had incurred, asserting that she was not eligible for continuing COBRA coverage because she was "covered" under her husband's plan for the type of benefits for which she sought reimbursement. As *Brock* explained it, *Oakley* turned on the fact that denial of continuing coverage would have created a "gap" in Oakley's coverage because the *character* of coverage was different. *Id.* at 297. In other words, because the specific benefits sought by Oakley were covered by his COBRA plan but not his wife's plan, Oakley was not really "covered" by another plan for purposes of the statute. By contrast, there was no "gap" in Brock's coverage as both plans covered the benefits she sought. *Brock* held that termination of the COBRA plan was proper. *Id.*

The third case, *National Co.,* builds upon *Brock.* Robert Hersh was covered by his employer and his wife's insurance policy before quitting his job. After he resigned, Hersh purchased COBRA continuing coverage from his employer. Subsequently, his wife had complications while giving birth to twins. When Hersh filed a claim under his COBRA coverage, it was denied on the grounds that he was "covered" by his wife's policy. Agreeing with *Brock,* the Eleventh Circuit explained that the time when the second insurance coverage was procured, whether concurrent or subsequent to the COBRA policy is irrelevant. *Id.* at 1570. The critical inquiry is whether there exists a "significant gap in coverage" between the

7

two plans. *Id.* at 1571. Since in that case both plans covered substantially the same expenses arising out of the twins' birth, the court concluded that termination was proper. *Id.*

*Brock* and *National Co.* and, to a lesser extent, *Oakley* have voiced a common interpretive theme of COBRA coverage: its purpose is to eliminate gaps in insurance coverage that could accompany changes in or loss of employment. These statements are not just a theme, however, but the enacted will of Congress in language sufficiently clear to achieve its purpose. Denying continuation coverage when a gap in coverage would otherwise occur would serve to frustrate Congressional intent. *Accord National Co.,* 929 F.2d at 1571. Therefore, we see no reason to depart from the analysis of these cases.

Hartford contends that the three cases are inapposite because they dealt with coverage by a second policy that existed concurrent with the COBRA continuation policy, and thus more properly turned on when, under the statute, the insured "first becomes" covered by the non-COBRA policy. In this case, however, Victoria first became a beneficiary under her husband's policy after COBRA coverage had begun; the analytical focus is solely on the word "covered" rather than on the question of the two policies' timing. While Hartford's argument has logical force, it does not account for the emphasis laid by three circuit courts, including our own, on the need to eliminate gaps in coverage. It is perfectly consistent with those cases to hold, as we do, that "coverage" means the actual provision for benefits in the insurance policy for which a COBRA continuation

8

policy is a supplement.

While Victoria was covered under her father's insurance policy, her medical bills incidental to her transplant were paid by Hartford. The follow-up expenses were not reimbursable under her husband's policy because they resulted from a pre-existing condition. When Hartford terminated Victoria's coverage under her father's policy, these expenses were not "covered" by any policy of insurance. There can be no doubt that Victoria experienced a significant gap in coverage.[5]

In 1989, Congress added the following italicized clause to the relevant statute, which now permits the insurer to terminate COBRA coverage on:

> "The date on which the qualified beneficiary first becomes, after the date of the election—
>
> (i) covered under any other group health plan (as an employee or otherwise) *which does not contain any exclusion or limitation with respect to any preexisting condition of such beneficiary....*"

42 U.S.C. § 300bb-2(2)(D)(i) (1989) (emphasis added). Had this language existed at the time of Victoria's COBRA election, it would have been clear that Hartford could not terminate her coverage when she joined her husband's policy. Congress, however, made this amendment retroactive only to elections made after January 1, 1989. Omnibus Budget Reconciliation Act of 1989, Pub.L.No. 101-239, §

---

[5]Because the statute at issue has been amended and applies retroactively to 1989, this is most likely a case of last impression. Therefore, we do not endeavor to define with precision what constitutes a "significant" gap in coverage. We decide today only that a gap created by a pre-existing condition exclusion qualifies as significant.

6801(b)(2)(B), 103 Stat. 2297 (1989). Because Victoria elected COBRA coverage in December, 1988, the amendment does not reach back to this case.

The parties disagree as to the effect of the amendment. Hartford argues, not unpersuasively, that the amendment evidences a Congressional intent to change the law as it previously stood. The limited retroactivity of the amendment bolsters this interpretation. Hartford also points for support to an IRS regulation that was proposed as an interpretation of the earlier statute. Prop.Treas.Reg. § 1.162-26, Q & A-38, 52 Fed.Reg. 22730 (1987). The proposed regulation stated that COBRA coverage could be terminated as early as:

> "the first date after the date of the election upon which the qualified beneficiary is covered ... under any other group health plan even if that coverage is less valuable to the qualified beneficiary than COBRA continuation coverage (*e.g., if the other coverage provides no benefits for preexisting conditions* )."

*Id.* (emphasis added). However, whatever influence this proposed regulation may have had on insurance company decisions while it remained pending, it was never adopted and thus has no precedential authority. *S. Cent. United Food & Commercial Workers Unions and Employers Health & Welfare Trust v. AppleTree Mkt., Inc. (In re AppleTree Mkt., Inc.),* 19 F.3d 969, 973 (5th Cir.1994) ("proposed regulations are not entitled to judicial deference and carry no more weight than a position advanced in a brief by one of the parties").

On the other hand, TML argues that the amendment effected a clarification in the law but did not change the law at all. We

10

agree.  The amendment did not change existing law but clarified and emphasized the original Congressional intent behind COBRA.  *See* H.R.Rep. No. 101-247, 101st Cong., 1st Sess. 145 (1989), *reprinted in* 1989 U.S.C.C.A.N. 1906, 2923.[6]  This circuit has already interpreted the 1989 amendment in *Brock,* stating that "[it] further *emphasizes* Congress's concern that group health plan participants and their dependents not be placed in a situation in which they suffer a gap in the character of coverage...."  *Brock,* 904 F.2d at 297 (emphasis added).  *Brock* relied on *Oakley* to illustrate that a gap in the character of coverage occurs when a medical condition is covered under one policy but not under the other.[7]  *Id.*  In *Oakley,* the insured's rehabilitation expenses were reimbursable under the COBRA continuing coverage policy but were excluded by the insured's other policy.  When the COBRA coverage was terminated, the insured suffered a gap in the character of coverage because his rehabilitation expenses were not covered by his wife's policy.

Likewise, Victoria suffered a gap in the character of her coverage when her COBRA coverage was terminated because her husband's policy expressly excluded all pre-existing conditions from coverage for a year.  As in *Oakley,* this exclusion amounts to a gap in the character of coverage, a gap eliminated first by the

---

[6]*See also Conery v. Bath Associates,* 803 F.Supp. 1388, 1403 (N.D.Ind.1992) ("The 1989 amendment did not change the law;  it merely clarified Congress' original intent.").

[7]For purposes of analyzing this particular statute, we interpret "significant gap in coverage" to mean the same as "a gap in the character of coverage" and use the terms interchangeably.

original language of the COBRA provision, but strengthened in the 1989 amendment. The advice that TML gave Victoria's mother, that Victoria could marry and still retain COBRA continuing coverage insurance, was correct. The termination therefore violated 42 U.S.C. § 300bb-2(2)(D) even as it existed prior to the 1989 amendment.

At oral argument and in a supplemental letter brief, Hartford contended that we need not address the language of the statute but can decide the case by construing the language of its contract with TML. Hartford asserts that its contractual obligation to TML was less encompassing than the COBRA provisions. In other words, Hartford argues that even if we decide that TML's interpretation of "covered" under the statute is correct, we should still find that Hartford was justified in terminating Victoria's policy because the contract allowed it to do so. The language of the contract belies Hartford's assertion: Hartford agrees to provide continuation coverage to those "who are entitled to such continuation under the Consolidated Omnibus Budget Reconciliation Act of 1985, subject to the payment of the required premium." The contract is coextensive with COBRA. Hartford's argument fails.

Hartford also asserts that its termination of the policy was reasonable in light of the legal authority available at the time.[8] But the reasonableness of Hartford's belief that it was entitled to

_____

[8]Hartford points to the proposed IRS regulation, *supra,* and the district court opinion in *Oakley v. City of Longmont,* both of which supported Hartford's interpretation of COBRA, but neither of which ultimately proved to be good law.

12

terminate the policy is not at issue.  Unfortunately for Hartford, it is possible to be reasonable and yet wrong.

Based upon the finding that TML personnel incorrectly advised Victoria's mother that Victoria was entitled to COBRA continuing coverage, the district court awarded Hartford its costs and fees reasonably incurred in defending and settling this lawsuit. Because we hold that Victoria was entitled to COBRA continuing coverage, this award must be reversed.  The question remaining to be resolved is whether TML is entitled, as it claims, to indemnity from Hartford.

## CONCLUSION

Victoria was protected by 42 U.S.C. § 300bb-2(2)(D)(i), in its earlier version, from termination of her COBRA coverage while her husband's policy provision excluding pre-existing conditions remained in effect.  Because the district court concluded otherwise, its judgment must be reversed, and the case must be remanded to the district court for a determination whether TML is entitled to indemnity from Hartford for any of its fees and costs incurred in litigating and settling Victoria's lawsuit.[9]

REVERSED and REMANDED.

---

[9]Our holding today does not require us to decide whether TML was entitled to any governmental immunity.