Kelly Ann TAYLOR, a Minor, by Debbie TAYLOR, Her Mother and Next Friend, Plaintiff,

v.

KAWNEER COMPANY COMPREHENSIVE MEDICAL EXPENSE PLAN FOR SALARIED EMPLOYEES, Defendant.

Civ. No. 95–5036.

United States District Court, W.D. Arkansas, Fayetteville Division.

Sept. 7, 1995.

670

C. Bass Trumbo, Kincaid, Horne, Trumbo & Hogue, Fayetteville, AR, for plaintiff.

Gary V. Weeks, Bassett Law Firm, Fayetteville, AR, for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is an action in which the plaintiff seeks to recover continuation coverage health insurance benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, as amended by the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. §§ 1161–68. The court has before it for review the administrative record that the parties have stipulated constitutes the entire record made before the administrator of the plan and the briefs of the parties.

The court also has before it for decision two motions to strike. One filed by each party in which the respective parties seek to strike certain information provided by the opposing party.

### I. Background

The plaintiff, Kelly Ann Taylor, was born January 27, 1994 and is the minor child of Debbie Taylor. Debbie Taylor was hired by Kawneer Company, Inc., as a drafting secretary on May 5, 1992 and was employed at Kawneer's production plant facility in Springdale, Arkansas. While she was employed at Kawneer, Debbie Taylor enrolled as a participant in the Kawneer Company Comprehensive Medical Expense Plan for Salaried Employees (Kawneer Plan), a group health insurance plan. The Kawneer Plan is an employee welfare benefit plan and is governed by the provisions of ERISA and COBRA. At the time of her enrollment, Debbie Taylor selected family coverage which included herself along with Bradford E. Taylor and Whitney J. Nicole Taylor, who were both dependents of Debbie Taylor.

On August 18, 1993, Debbie Taylor was informed her position was being eliminated due to an economic reduction. Her last day of work was August 18. Kawneer continued to pay Debbie Taylor her full salary and to maintain her group health benefits through August 31, 1993.

On September 3, 1993, Debbie Taylor elected to continue single medical coverage for herself and dental coverage for her dependents, Bradford E. Taylor and Whitney J. Nicole Taylor. Accordingly, Debbie Taylor tendered a check to Kawneer which paid for continued individual medical coverage on herself and continued dental coverage for her dependents for the month of September, 1993.

On October 11, 1993, Debbie Taylor requested the termination of dental insurance for her dependents. The dental insurance on Debbie Taylor's dependents was dropped in accordance with her request effective October 1, 1993. As of that date, the only continuing coverage selected and purchased by Debbie Taylor was individual medical coverage for herself. Debbie Taylor submitted payments for the month of October and November for individual medical coverage only.

Debbie Taylor was hired on November 1, 1993, by the City of Springdale and subsequently, enrolled with the Municipal Health Benefit Fund (Municipal Plan). Debbie Taylor and her dependents were afforded medical care and group health benefits under the Municipal Plan effective November 1, 1993.

After Debbie Taylor was terminated from Kawneer Company, she became pregnant with the plaintiff, Kelly Ann Taylor. Because of the timing of her pregnancy, the pregnancy was classified as a "preexisting" condition and thus excluded from the Municipal Plan's coverage. As a result of this

exclusion, on December 15, 1993, Debbie Taylor executed another COBRA election form with the Kawneer Plan. She once again chose individual medical care coverage for herself only.

On January 27, 1994, Debbie Taylor gave birth to Kelly Ann Taylor, the plaintiff. The plaintiff was born prematurely and incurred medical expenses relating to her premature condition. The newborn dependent of Debbie Taylor was covered under the Municipal Plan from birth. At the time of Kelly Taylor's birth, Debbie Taylor did not have family coverage through the Kawneer Plan.

The Municipal Plan provided medical care benefits for newborn dependents of plan participants up to $100,000.00 for the first twelve months of the newborn's life. The Municipal Plan paid its policy limits of $100,000.00 for medical care on Kelly Taylor's behalf. This amount however, did not cover the total amount of medical expenses claimed by the plaintiff, $221,585.88.

In an attempt to claim the remaining $121,585.88, in February of 1994, Debbie Taylor, through her husband Brad Taylor, requested the Kawneer Plan to add family coverage to her individual COBRA coverage. This request was made on an unsigned and undated "change [of] beneficiary/reclassify [of] dependents card." By check dated February 23, 1994, Debbie Taylor paid the premium amount for family coverage for the last five days in January and for the month of February. This check was deposited by Kawneer. On March 10, 1994, the Kawneer Plan wrote Debbie Taylor and denied her request for COBRA coverage on the plaintiff. The letter contained specific reasons for the denial of coverage and further it advised her of the existence of an appeal process.

Notwithstanding this letter, Debbie Taylor on March 11, 1994, tendered a check representing the premium amount for family coverage for the month of March, 1994. By letter dated March 11, 1994, Debbie Taylor was notified that the check would be held pending review of the status of Kelly Taylor's COBRA coverage. The letter also advised Debbie Taylor that if family coverage was not available the check would be returned. By letter dated March 15, 1994, the check was returned along with a full refund of the sum tendered earlier by Debbie Taylor for family coverage. Furthermore, by letter dated April 5, 1994, the Kawneer Plan advised Debbie Taylor that in order to maintain her individual coverage, she would have to remit the correct premium amount for the past two months and the next two months. If the payments were not submitted quickly, the COBRA coverage for Debbie Taylor would lapse. Debbie Taylor failed to continue her premium payments, as instructed by the Kawneer Plan, and thus was discontinued from the Plan for failure to pay premiums effective March 1, 1994.

Debbie Taylor through her attorney made formal demand for the addition of family coverage arguing the Kawneer Plan was obligated to provide COBRA coverage because of the apparent "gap" in coverage. This demand was denied. The appeal process was utilized and the decision affirmed by the Kawneer Plan administrator.

## II. Standard of Review

■ The appropriate standard of review for a denial of benefits under ERISA is *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), in which case review is under the arbitrary and capricious standard.[1] "The key, then, lies in determining whether a plan provides an administrator with such discretion." *Winchester v. Prudential Life Ins. Co. of America,* 975 F.2d 1479, 1483 (10th Cir.1992).

The Supreme Court has stated that absent a clear grant of discretion to the fiduciary, application of the highly deferential arbitrary

---

1. Sometimes the Eighth Circuit will refer to the arbitrary and capricious standard as the abuse of discretion standard, but the two differ in name only. *See Lutheran Med. Ctr. v. Contractors Health Plan,* 25 F.3d 616, 620 n. 2 (8th Cir. 1994); *Collins v. Central States Southeast & Southwest Areas Health & Welfare Fund,* 18 F.3d 556, 559 (8th Cir.1994); *Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 572 n. 3 (8th Cir.1992).

and capricious standard of review does not promote the goals of ERISA. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. at 111–16, 109 S.Ct. at 955–56. There is no "magic language" and the "Supreme Court directed lower courts to focus on the breadth of the administrators' ... 'authority to determine eligibility for benefits or to construe terms of the plan'...." *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 637 (5th Cir.1992), *quoting, Block v. Pitney Bowes, Inc.,* 952 F.2d 1450, 1453 (D.C.Cir.1992). Each case necessarily turns on the language of the plan at issue.

The defendant, Kawneer Company Comprehensive Medical Expense Plan for Salaried Employees, admits that the Kawneer Plan does not contain any language specifically granting the administrator discretionary authority to interpret plan provisions. The court therefore, will conduct a *de novo* standard of review.

### III. Motions to Strike

The defendant contends that Exhibit A–15 and Exhibits A–25(B)(1)–(15) were not part of the administrative record and should be stricken and thereby disregarded by the court. Exhibit A–15 is a letter dated February 22, 1994, from Debbie Taylor's attorneys to Valerie Lee at Kawneer. The letter discusses his understanding of the addition of Kelly Taylor to the Kawneer Plan and calculates the insurance premium due for family coverage. Exhibits A–25(B)1–15 consist of a number of letters between the attorneys for the parties subsequent to Kawneer's denial of continuation coverage.

When a court reviews a decision *de novo* it simply decides whether or not it agrees with the decision under review. *See Perry v. Simplicity Engineering Div. of Lukens Gen. Indus.,* 900 F.2d 963 (6th Cir. 1990), *citing* 2 S. Childress & M. Davis, *Standards of Review* § 15.2 (1986). The term is used, however, to refer both to review of the decision below based only on the record below and to review based on the record below plus any additional evidence received by the reviewing court. *Id.*

The Eighth Circuit has held that to ensure expeditious judicial review of ERISA benefit decisions and to keep courts from becoming substitute plan administrators, district courts should not exercise this discretion to introduce additional evidence absent good cause to do so. *Donatelli v. Home Ins. Co.,* 992 F.2d 763, 765 (8th Cir.1993), *citing, Davidson v. Prudential Ins. Co. of Amer.,* 953 F.2d 1093, 1095 (8th Cir.1992). For instance, when a district court must arrive at its own factual findings and a health insurance plan has made no factual determination in denying contract benefits, the court "may permit the introduction of additional evidence necessary to enable it to make an informed ... judgment." *Welsh v. Burlington Northern Emply. Ben. Plan,* 54 F.3d 1331 (8th Cir.1995); *citing Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1099 (7th Cir.1994).

If the record is sufficiently developed, the district court may, in its discretion, merely conduct a *de novo* review of the record of the administrator's decision, making its own independent benefit determination. *See Luby v. Teamsters Health, Welfare & Pen. Tr. Funds,* 944 F.2d 1176, 1184–85 (3d Cir. 1991). *See also McMahan v. New England Mut. Life Ins. Co.,* 888 F.2d 426, 431 (6th Cir.1989). A district court should not however, take any additional evidence merely because new evidence, which was not presented to the plan administrator, was discovered later. *See Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan,* 46 F.3d 938, 944 (9th Cir.1995).

The Third, Fourth, Seventh, Ninth, and Eleventh Circuits agree with the Eighth that new evidence may be considered under certain circumstances to enable the full exercise of informed and independent judgment. *See Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1098 (7th Cir.1994); *Donatelli v. Home Ins. Co.,* 992 F.2d 763, 765 (8th Cir.1993); *Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1025 (4th Cir.1993) (en banc) (several exceptional circumstances that could warrant an exercise of the court's discretion to allow additional evidence were listed); *Luby v. Teamsters Health, Welfare and Pension Trust Funds,* 944 F.2d 1176, 1184–85 (3d Cir.1991); *Moon v. American Home Assurance Co.,* 888 F.2d 86, 89 (11th Cir.1989). *Cf. Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan,* 46 F.3d 938 (9th

Cir.1995); *Davidson v. Prudential Ins. Co.,* 953 F.2d 1093, 1094 (8th Cir.1992); *Perry v. Simplicity Eng'g, Div. of Lukens Gen. Indus., Inc.,* 900 F.2d 963, 966 (6th Cir.1990).

The defendant contends that the letters in Exhibit A "25(B)(1)–(15)" constitute "routine correspondence carried on between the parties through their lawyers in an attempt to evaluate and possibly conclude the case before litigation," and should not be included as part of the record. The letters contained in Exhibit A 25(B)(1)–(15) are communications between the parties' lawyers requesting information such as medical authorization as well as copies of medical bills and an itemized expense list incurred by the plaintiff. The plaintiff requests the information to be included in the record to illustrate the amount of medical bills that have been left unpaid. These letters were not before the plan administrator and should not be considered as additional evidence absent good cause to do so. *Donatelli v. Home Ins. Co.,* 992 F.2d 763, 765 (8th Cir.1993). Since, the court is reviewing only the decision of the plan administrator for error and not the actual amount benefits to be awarded, the letters and the medical bills in Exhibit A 25(B)(1)–(15) should not be included as additional evidence to the record.

The second exhibit in dispute is Exhibit A–15, a letter written by the plaintiff's attorney to an employee in the personnel department of Kawneer Company at its Springdale, Arkansas location. The letter confirms the plaintiff's attorney's understanding regarding Kawneer Company's coverage of the plaintiff. The plaintiff believes that the letter has a direct bearing on the defendant's knowledge of her existing medical plan while she sought continuing coverage from the Kawneer Company. The defendant objects to the incorporation of this letter into the record on the basis of its content which is in controversy.

Despite its objections to A–15, defendant has with its brief provided the court with the affidavit of the Kawneer employee, Valerie Lee Baker, to whom the letter was written. The affidavit details Ms. Baker's contacts with the Taylors and her actions during the attempt to add Kelly Taylor to the Kawneer Plan. The plaintiff has moved to strike this affidavit and any reference to it contained in defendant's brief. Defendant has used the affidavit to support its position on the merits of this case.

Because of the estoppel claim, we will allow exhibit A–15 and the affidavit of Valerie Baker to constitute part of the record. The affidavit has far more relevancy to the issues at hand than does the letter contained in exhibit A–15. Nevertheless, we will consider both in connection with our review.

## IV. Continuation Coverage under COBRA

■ The first question presented is whether the defendant was required to provide the Kelly Taylor with continuation medical coverage under COBRA. COBRA compels employers operating ERISA plans to offer self-paid continuation coverage to "qualified beneficiaries," ordinarily their employees and the dependents of employees, upon the occurrence of certain "qualifying events" that would otherwise terminate coverage. 29 U.S.C. § 1161(a). The coverage must extend for a period beginning on the date of the qualifying event and ending not earlier than 18 months after the date of the qualifying event. 29 U.S.C. § 1162(2).

The term "qualifying event" is defined to mean with respect to any covered employee "[t]he termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment." 29 U.S.C. § 1163(2). It is undisputed that Debbie Taylor suffered a "qualifying event" that entitled her to notice and opportunity to avail herself of continuation coverage. The question here, however, is whether Kelly Taylor is entitled to continuation coverage.

The term "qualified beneficiary" is defined to mean "with respect to a covered employee under a group health plan, any other individual who, on the day before the qualifying event for that employee, is a beneficiary under the plan—(i) as the spouse of the covered employee, or (ii) as the dependent child of the employee." 29 U.S.C. § 1167(3)(A). "Qualified beneficiaries" are given an election period in which they can elect COBRA continuation coverage.

Kawneer argues that Kelly Taylor was not covered under its plan as a dependent of Debbie Taylor as of the date Debbie Taylor was terminated from her job, the "qualified event." The Kawneer Plan defines the term dependent to include the employee's spouse, unmarried children who are under the age of 19, and any other unmarried child under age 25 who goes to school on a regular basis and depends solely on you for support. Clearly Kelly Taylor, who had not been conceived at the time of the qualifying event, was not a beneficiary under the Kawneer Plan as a dependent child on the day before Debbie Taylor's job was eliminated. Kelly Taylor is therefore not a "qualified beneficiary" as that term is defined in COBRA. 29 U.S.C. § 1167(3)(A)(ii). She therefore was not entitled to the benefits provided by COBRA.

## V. Continuation Coverage under the Plan

■ Kelly Taylor argues that even if she is not entitled to continuation coverage under COBRA's statutory provisions, she is entitled to such coverage under the terms of the Kawneer Plan. Specifically, plaintiff relies on the following provision in the Summary Plan Description (SPD) contained under the heading continuation of coverage under federal law:

In accordance with federal law (PL 99–272) as amended, your Employer is providing covered persons with the right to continue their health expense coverage under certain circumstances.

You or your dependents may continue any health expense coverage then in effect, without having to submit evidence of good health, if coverage would terminate for the reasons specified in sections A, B or C below. . . .

Subject to the payment of any required contribution, health expense coverage **may**

also be provided for any dependents you acquire while the coverage is being continued. Coverage for these dependents will be subject to the terms of this Plan regarding the addition of new dependents.

Stipulated Exhibit A–2, at p. 41 (emphasis added). With respect to the effective date of coverage for dependents the SPD provides "[c]overage for your dependents will take effect on the date yours takes effect if, by then, you have requested dependent coverage. You should report any new dependents." Stipulated Exhibit A–2 at p. 2. The SPD further provides that "[c]overage for a newborn child will not be delayed if he or she becomes covered within 31 days after he or she becomes eligible." *Id.*

On September 3, 1993, Debbie Taylor elected to continue medical coverage only for herself and dental coverage only for her children. Once she found a new position with the City of Springdale she enrolled in the City's medical plan. Although Debbie Taylor enrolled in another plan, she continued monthly payments to the Kawneer Plan.

Under COBRA continuance coverage ordinarily ceases when the qualified beneficiary becomes covered under another group health plan. However, this is true only if the group health plan "does not contain any exclusion or limitation with respect to any preexisting condition of such beneficiary." 29 U.S.C. § 1162(2)(D).

■ Assuming that because of the language in the Kawneer SPD Debbie Taylor and/or Kelly Taylor had the right, separate and apart from the statutory provisions of COBRA, to elect or add Kelly Taylor to the Kawneer Plan as a dependent for continuation coverage, that coverage would nevertheless have ceased to exist when Kelly Taylor became covered under the Municipal Plan.[2]

---

2. Kawneer appears to believe it can be required to provide continuation coverage only if the individual seeking coverage is a "qualified beneficiary" under COBRA. However, it is clear that Kawneer could be bound by language contained in the SPD. *See e.g., Hansen v. Continental Ins. Co.*, 940 F.2d 971, 981 (5th Cir.1991) (under 29 U.S.C. § 1022 SPD must be accurate and is binding).

Kawneer also relies on certain proposed COBRA regulations. Prop. Treas. Reg. § 1.162–26.

These are merely proposed regulations and are not entitled to any deference. *See e.g., South Central United Food & Comm. Workers Unions & Employers Health and Welfare Trust v. Apple Tree Markets, Inc.*, 19 F.3d 969, 972–73 (5th Cir. 1994). Additionally, the proposed regulations merely attempt to interpret the requirements of COBRA. The proposed regulations therefore have no bearing on whether Kawneer is obligat-

With respect to the termination of continuation coverage, the SPD provides in part as follows:

> Coverage will terminate on whichever of the following is the earliest to occur:
>
> The end of an 18–month period after the date of the event which would have caused coverage to terminate.
>
> \*  \*  \*  \*  \*  \*
>
> The date the individual fails to pay any required contribution.
>
> The first day after the date of the election that the individual is covered under another group health plan. However, continued coverage will not terminate until such time that the individual is no longer affected by a preexisting condition exclusion or limitation under such other group health plan.

Stipulated Exhibit A–2 at pp. 41–42. With respect to the termination of continuance coverage for dependents the SPD provides it shall terminate, *inter alia*, "[t]he first day after the date of the election that the dependent is covered under another group health plan. However, continued coverage will not terminate until such time that the dependent is no longer affected by a preexisting condition exclusion or limitation under such other group health plan." Stipulated Exhibit A–2 at p. 43.

There is no language in the SPD that can be relied on to extend the existence of continuation coverage once other group health insurance is obtained. Kelly Taylor had no preexisting condition that was not covered under the Municipal Plan. Thus, the attempted election made after Kelly Taylor's birth did not provide continuation coverage under COBRA or under the terms of Kawneer's SPD.[3]

## VI. "Gap" in Coverage

■ Kelly Taylor next argues that because of the significant gap in coverage caused by the $100,000 benefits limitation contained in the Municipal Plan she is entitled to coverage under the Kawneer Plan. In support, plaintiff cites the court to *National Companies Health Benefit Plan v. St. Joseph's Hospital of Atlanta, Inc.*, 929 F.2d 1558 (11th Cir.1991), *McGee v. Funderburg*, 17 F.3d 1122 (8th Cir.1994), and *Brock v. Primedica, Inc.*, 904 F.2d 295 (5th Cir.1990). Each of these cases involved preexisting as opposed to after-acquired health care coverage. That is, at the time of the qualifying event the individual had dual or double coverage under two existing health plans. *See also Lutheran Hosp. of Ind. v. Business Men's Assur.*, 51 F.3d 1308 (7th Cir.1995) (plain language of the statute dictates that an individual only loses COBRA eligibility if he or she chooses to accept alternate group health insurance after the qualifying event).

The *National* case involved a claim made by a former employee after his resignation. Robert Hersh resigned from National Distributing Company (NDC) and elected to continue group health coverage under NDC's plan. *Id.* at 1561. Mr. Hersh, both before and after his resignation, was also covered by a group health plan of his wife's employer St. Joseph's Hospital of Atlanta. *Id.* Both Mr. and Mrs. Hersh had elected family coverage under their respective plans. By arrangement NDC's plan served as primary insurer for Mr. Hersh and any dependents and St. Joseph's served as secondary coverage for Mr. Hersh and their dependents and provided primary coverage from Mrs. Hersh only. *Id.* at 1562. Prior to Mr. Hersh's resignation from NDC, Mrs. Hersh became pregnant with twins and began to experience difficulties. Medical evidence indicated the preg-

---

ed because of language in its SPD to provide continuation coverage.

**3.** Exhibit A–12 of the stipulated record is the request for reclassification of dependents. The card itself is nearly unreadable; filled with chicken-scratched names and dates written in the margins, it is difficult to ascertain exactly what the parties were requesting. In addition, the card is unsigned and undated. It appears that the request to change Debbie Taylor's medical coverage from individual to group coverage is incomplete. Without a signature or date, it is difficult for the court to view the coverage as being effectively changed.

However, even if the request card at Exhibit A–12 was complete and thereby effective, the eligibility for Kelly Taylor for coverage under the Kawneer Plan ceased to exist the day she was born, as that is the day she became covered under the Municipal Plan.

nancy would be a difficult one. The Hershes wanted to maintain dual family coverage and contacted several insurance companies regarding rates, benefits, and whether the company would cover the existing pregnancy.

In January of 1987, Mr. Hersh informed NDC that he intended to resign and start a new business. However, he wanted to continue his insurance coverage and maintain dual family coverage. *Id.* at 1563. Mr. Hersh consulted an NDC employee who handled benefit claims and forms and was told that he would be eligible for continuation coverage. *Id.* Mr. Hersh filled out an election form which in part indicated that the coverage would terminate if he became covered under another group health plan because of either employment or remarriage. *Id.* Mr. Hersh made the first monthly premium payment at the time of the election and continued to make the payments thereafter.

Following the premature birth of the twins, but before any claims were submitted, the administrator of the NDC plan employed a medical claims investigator to evaluate the medical condition of the twins, the medical care involved in treating the twins, and the potential costs of the care. The investigation showed the costs would be high.

Medical claims for the birth and care of the twins were submitted to NDC's plan. While reviewing the claims, a claims processor for the NDC plan noticed Mr. Hersh was covered under the St. Joseph's Plan. In her opinion this meant Mr. Hersh was not eligible for continuation coverage. As a result of this discovery, Mr. Hersh's policy was retroactively revoked to the date of his resignation. All claims were denied and those not already processed were sent to St. Joseph's Plan for processing. *Id.* at 1563–64. The St. Joseph's Plan contended the National Plan was still primarily responsible for Robert Hersh's and his dependents' medical care and that St. Joseph's was only required to provide secondary coverage. The NDC Plan attempted to refund the premium payments made by Mr. Hersh, plus ten percent interest. Mr. Hersh did not accept the refund and continued the premium payments. *Id.*

The district court held that NDC was not required under ERISA or COBRA to provide Mr. Hersh continuation coverage. However, it held that NDC was equitably estopped from denying such coverages to the Hershes. The court relied on the following points: (1) the fact that NDC offered Mr. Hersh continuation coverage despite its knowledge that it was not required under the law to do so; (2) the fact that NDC did not correct this "error" for four months during which premium payments were made and accepted; and (3) the fact that Mr. Hersh justifiably relied on the continuation coverage. In affirming the Eleventh Circuit made the following findings:

> First, we find that an ERISA provider is not required to offer continuation coverage to an employee or his dependents who are covered under a preexisting group health plan. Second, since continuation coverage is, by operation of law, part of every ERISA plan, an ERISA-plan sponsor's representations to its employees as to the meaning of COBRA's and the Tax Reform Act's amendments to ERISA is an interpretation of a provision of the plan itself. Thus, if the ERISA provider *misinforms* its employee about his rights to continuation coverage, and the employee relies on that misinformation to his detriment, the provider will be held liable under the equitable doctrine of estoppel.

*Id.* at 1566.

With respect to the concept of a "gap" in coverage creating entitlement to continuation coverage, the Eleventh Circuit stated:

> There may be, however, instances when, despite coverage under a preexisting group health plan, an employee is entitled to receive continuation coverage under his previous employer's ERISA plan. If there is a significant gap between the coverage afforded under his employer's plan and his preexisting plan, an employee will be eligible for continuation coverage. This is because, in that situation, the employee is not truly "covered" by the preexisting group health plan, as that term is used by Congress to effectuate its intent; the employee, despite his other coverage, will be liable personally for substantial medical expenses to his and his family's detriment. Denying continuation coverage in that set-

ting would serve to frustrate, rather than foster, Congress' clear intention.

*Id.* at 1571. With respect to the Hershes' situation the court found no significant gap in coverage to exist.

> In the present case, there is no significant gap in the coverage; under both the National Plan and the St. Joseph's Plan, the Hershes are covered for most medical expenses arising out of the birth of the twins. The Hershes are personally responsible for approximately $6,700 of medical expenses. This responsibility arises, however, because they lack dual coverage, not because the St. Joseph's Plan is inadequate; coverage under the National Plan alone would not put the Hershes in any better position. Accordingly, we hold that Robert Hersh is not entitled to continuation coverage under ERISA.

*Id.*

In this case the alleged "significant gap in coverage" is created by the $100,000 limitation on benefits contained in the Municipal Plan for newborn dependents. The Municipal Plan's coverage was, or course, acquired after the qualifying event and election period. The Kawneer Plan contains no such limitation for newborns; instead, the applicable limit is $1,000,000 over the dependent's lifetime. Because of the Municipal Plan's limitation, there remains unpaid a balance of over $121,000.

■ Plaintiff's argument is quite simply that the monetary limitation on benefits contained in the Municipal Plan is a significant gap in coverage. Even if we assume the cases cited by plaintiff stand for the proposition that the existence, or possibility of the existence, of personal liability for medical expenses is sufficient to create a significant gap in coverage and require continuation coverage,[4] such coverage would still not extend to Kelly Taylor under the circumstances involved in this case. Kelly Taylor was not covered under the Kawneer Plan. None of the cases cited by the plaintiff have extended continuation coverage in favor of someone who was not covered or entitled to be covered under the plan in question. Debbie Taylor elected only individual coverage. Thus, her dependents were not covered under the continuation plan. There is nothing in COBRA that requires the ERISA Plan to allow a second later election to bring within the scope of the continuation coverage additional individuals. As we noted previously, Kelly Taylor was not herself a qualified beneficiary and no election could be made on her behalf.

■ If the significant gap analysis is applicable at all in the context of after-acquired health coverage, which we doubt, we also have serious doubts that the mere existence of financial liability for medical expenses in and of itself qualifies as a significant gap in coverage. We recognize that there is language in both *National* and in *McGee* to support plaintiff's position. *McGee v. Funderburg,* 17 F.3d 1122 (8th Cir.1994) (significant difference where employee would be personally liable for over $7,500 under one plan whereas she would have been liable for only $1000 under the other plan). We cannot so hold. *See Lutheran Hosp. of Ind. v. Business Men's Assur.,* 51 F.3d 1308, 1315 (7th Cir.1995) ("Does the magnitude of personal liability sufficient to constitute a gap depend on the ability of the individual to pay or on the overall scale of their medical expenses? These questions are ones which courts should not ask or answer without congressional authorization or direction. The only gap that should be relevant and judicially cognizable is that perceived by the insured individual who chooses to pay the COBRA premiums to continue her additional coverage.").

The fact that the Taylors may have significant monetary liability absent "dual coverage is not necessarily indicative of a "significant gap' in coverage...." *Daniel v. Master Health Plan, Inc.,* 864 F.Supp. 1399, 1406 (S.D.Ga.1994). If the potential of monetary liability were sufficient to mandate continuation coverage, we would in essence be doing

---

4. We hasten to say that we do not make this assumption. As the court in *Lutheran Hosp. of Ind. v. Business Men's Assur.,* 51 F.3d 1308, 1314 (7th Cir.1995) noted "[t]he amendment does not speak of 'inferior' or 'non-comparable' coverage, and therefore does not authorize courts to make such comparisons and determinations."

away with one of the statutorily defined termination points of continuation coverage. The court can conceive of many situations where policy limits might be exhausted because of catastrophic injury of other serious medical condition. We do not believe the mere existence of personal liability for medical expenses qualifies as a significant gap in coverage and requires continuation coverage. Rather, a significant gap in coverage exists when coverage is excluded or limited for certain types of conditions or treatments. *See e.g., Brock v. Primedica, Inc.,* 904 F.2d 295, 297 (5th Cir.1990) (both plans covered the type of medical problems for which she claimed benefits).

In determining whether a significant gap in coverage exists, the court must instead look to the policy benefits, whether there is any exclusion or limitation on preexisting conditions, and the types of treatments that are foreseeably required. *National,* 929 F.2d at 1569; *Daniel,* 864 F.Supp. at 1406. Both plans here provide a comprehensive package of health care benefits.

## VI. Equitable Estoppel

■ Even if the court concludes Kawneer was not required to provide Kelly Taylor with continuation coverage, she argues the defendant should be estopped from denying such coverage. In support, plaintiff asks the court to consider the following facts: (1) Debbie Taylor elected continuation medical coverage for herself on September 3, 1993; (2) Debbie Taylor gave birth to Kelly Taylor while the continuation medical coverage was still in effect and notified Kawneer of her desire to change from individual to family coverage; (3) the change of beneficiary form contains the notation family effective 1/27/94; (4) letters from Debbie Taylor's attorney reflect communications regarding continuation coverage and show that Kawneer was aware of the existence of other medical insurance; (5) a check dated February 23, 1994, is delivered to Kawneer for family coverage and is cashed; and (6) defendant's March 10, 1994, letter denying any obligation for continuation medical coverage and tendering a refund of the premium amounts to an attempt to cancel coverage already in effect. Plaintiff contends that by processing Debbie Taylor's ap-

plication for continuation coverage and accepting payment of the premium with the knowledge that plaintiff's mother had pre-existing coverage, defendant led plaintiff's parents to believe she was covered and should be estopped from denying coverage.

In discussing the applicability in general of equitable estoppel to ERISA actions, the Eighth Circuit has left the question open. *See e.g., Jensen v. SIPCO, Inc.,* 38 F.3d 945, 953 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1428, 131 L.Ed.2d 310 (1995). However, the Eighth Circuit has ruled that "an ERISA plaintiff may not use equitable estoppel to recover money damages for reliance on an 'extra-contractual promise.'" *Id.* at 953, *citing, Slice v. Sons of Norway,* 34 F.3d 630, 632 (8th Cir.1994). "Moreover, even assuming that the doctrine applies, courts recognizing estoppel in ERISA cases require proof of a material misrepresentation on which the participant or beneficiary has reasonably relied." *Jensen,* 38 F.3d at 953.

■ This court has previously held that estoppel principles may be applied in ERISA cases so long as the challenged actions do not involve alleged modifications of the plan. *Fitch v. Arkansas Blue Cross and Blue Shield,* 795 F.Supp. 904, 908 (W.D.Ark.1992). Thus, since this action is not based on an alleged modification of the Kawneer Plan, equitable estoppel principles will apply to this ERISA case.

The elements of equitable estoppel are: (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation. *Fitch,* 795 F.Supp. at 908. *See also Heckler v. Community Health Servs., Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984); *National Companies Health P. v. St. Joseph's Hospital,* 929 F.2d 1558 (11th Cir.1991).

It is undisputed that sometime after the plaintiff was born, Debbie Taylor changed, or attempted to change, her individual medical coverage to group coverage as evidenced by an undated and unsigned change of beneficiary/dependent card in Exhibit A–12 of the record. However, there is no evidence other than the fact that one check was cashed that indicates defendant made any representation, orally or in writing, that coverage existed for Kelly Taylor. Rather, the evidence shows the defendant merely attempted to ascertain its obligations to the plaintiff. Once it determined no obligation existed to provide the coverage, defendant acted quickly in so advising the Taylors.

Under the circumstances of this case, we conclude the plaintiff has failed to establish the requisite elements of equitable estoppel. There were no oral interpretations of the plan relied on by the plaintiff. Nor did Kawneer in writing or orally represent that there would be continuation coverage for Kelly Taylor. The acceptance of the premium was with the understanding that the Kawneer would have to investigate its duty to Kelly Taylor under COBRA.

▮ Plaintiff's final argument is that the cancellation of the coverage cannot be retroactive and is effective only after notice of the cancellation is received. As a majority of the medical bills were incurred before the letter of "cancellation" was received, plaintiff contends the Kawneer Plan must pay the unpaid balance as of the effective date of the cancellation.

We reject this argument. The cases relied on by plaintiff in support of this argument presuppose the existence of coverage. As no coverage in favor of Kelly Taylor ever existed under the Kawneer Plan, this theory is not applicable.

## VI. Conclusion

This court is empathetic with the plaintiff and her family's economic situation due to the medical expenses incurred during Debbie Taylor's pregnancy and plaintiff's premature birth. However, after a full review of the record, the court finds the decision of the administrator to have been correct.